# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2200

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the District |
| | *   of South Dakota. |
| Thomas Yellow Hawk, Jr., | * |
| | * |
| Appellant. | * |
| | * |

_____

Submitted: November 13, 2001

Filed: January 10, 2002

_____

Before BYE, RICHARD S. ARNOLD, BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Appellant, Thomas Yellow Hawk, Jr., was convicted on three counts of sexual abuse and sentenced to seventy months in prison. On appeal, Yellow Hawk challenges several trial rulings made by the district court.[1] For the reasons set forth below, we affirm.

_____

[1] The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

## I. BACKGROUND

On April 20, 2000, Thomas Yellow Hawk, Jr. was charged by indictment with three counts of sexual abuse, a violation of 18 U.S.C. § 2242(2)(b). The allegations concerned Yellow Hawk's behavior on or about January 29, 2000, in St. Francis, South Dakota.

On that date, Yellow Hawk assisted his longtime friend, Merrill Whirlwind Soldier at the latter's garage with mechanical repair work on a car. Yellow Hawk and Whirlwind Soldier were close friends, and Yellow Hawk also knew Thomasine Whirlwind Soldier, Merrill's wife. The two men started drinking around 5:30 p.m. on that day and consumed a large quantity of alcohol throughout the evening and well into the early morning hours. Thomasine joined the two men early in the evening and again in the early morning hours and the three drank heavily together.

Near the end of the drinking binge, Yellow Hawk, Thomasine, and Merrill went into the Whirlwind Soldiers' home and drank at the kitchen table until around 7:30 a.m. Each considered themself drunk by this time. Yellow Hawk then "passed out" and was carried to a nearby couch. Merrill and Thomasine Whirlwind Soldier went to their bedroom and went to sleep.

Merrill's fourteen-year old son, A.W.S., was living with his father and stepmother at that time, and was the only witness to the charged crime. A.W.S. observed Yellow Hawk enter Merrill and Thomasine's bedroom, stand over Thomasine, take her pants off, and engage in sexual acts as described in the indictment. Merrill and Thomasine were not awake during this time. According to A.W.S., Yellow Hawk called A.W.S. to the living room shortly thereafter and told him that they "needed to have a man-to-man talk." A.W.S. testified that Yellow Hawk then took A.W.S. to the bedroom and attempted to get A.W.S. to touch his

stepmother but A.W.S. refused. After the two left the bedroom, A.W.S. drove Yellow Hawk home.

Thomasine acknowledged at trial that she was intoxicated during the time in question. She has no recollection of anything that happened between the time she and her husband retired, and the time she woke at around noon. She remembers going to bed wearing a t-shirt, blue spandex pants, socks and underwear. When she woke up, she was naked from the waist down and was hanging half-way off the bed.

The next day, A.W.S. disclosed to Thomasine's sister what he had observed Yellow Hawk do to Thomasine. Thomasine's sister and mother then traveled to Thomasine's home and told her about A.W.S.'s accusations. Thomasine reported the incident to the police the following day and three months later the indictment was issued.

Following trial in February 2001, Yellow Hawk was convicted by a jury on all three counts and sentenced to seventy months in prison. Yellow Hawk raises four issues on appeal. First, Yellow Hawk contends the district court erred in allowing the government to question Thomasine's husband about an allegation of bribery. Yellow Hawk next contends the district court erred by denying his motion for judgment of acquittal. Third, Yellow Hawk alleges error in the failure of the court to conduct a voluntariness hearing prior to the admission of his statement. Finally, Yellow Hawk alleges that the court should have instructed the jury on the defense of voluntary intoxication.

## II.   DISCUSSION

As to the prejudicial testimony, failure to conduct a voluntariness hearing, and jury instructions, we review for plain error as trial counsel failed to object or otherwise raise these issues before the district court. United States v. Mora-Higuera,

269 F.3d 905, 911 (8th Cir. 2001). "We will reverse under plain error review only if the error prejudices the party's substantial rights and would result in a miscarriage of justice if left uncorrected." United States v. Parker, 267 F.3d 839, 844 (8th Cir. 2001). "Plain error review is extremely narrow and is limited to those errors which are so obvious or otherwise flawed as to seriously undermine the fairness, integrity, or public reputation of judicial proceedings." United States v. Beck, 250 F.3d 1163, 1166 (8th Cir. 2001) (citations omitted).

Yellow Hawk claims that the district court committed plain error by not granting a mistrial when the government questioned the victim's husband on redirect regarding an alleged bribe offered by Yellow Hawk's brother to induce Thomasine to "forget" the allegations. We find no plain error. In fact, the defense raised the issue of bribery allegations in the cross-examination of the victim, who was the first person to testify, and again on direct examination of Yellow Hawk's brother. The government reasonably responded to this line of questioning by asking Merrill Whirlwind Soldier about the alleged bribery on redirect. We find that the reference to the alleged bribe did not affect Yellow Hawk's substantial rights.

Also without merit is Yellow Hawk's contention that the district court was required to conduct a voluntariness hearing outside the presence of the jury. Yellow Hawk never confessed to this crime. In fact, his only statement was that he was so intoxicated, he could not remember anything during the time of the crime alleged in the indictment. Thus, we have no reason to discuss United States v. McClinton, 982 F.2d 278 (8th Cir. 1992) or its progeny.[2]

_____

[2]Yellow Hawk asserts that McClinton is controlling on this issue. However, McClinton merely discusses the appropriate test for determining the voluntariness of a confession in a case where the defendant discussed details of his crime with detectives during an interrogation. Yellow Hawk never confessed and so the analogy is fruitless.

Our final issue under plain error review is Yellow Hawk's claim that the district court erred in failing to instruct the jury on the defense of voluntary intoxication. Again, Yellow Hawk did not object to the proposed instructions at trial. Failure to object to jury instructions results in waiver of any assignment of error as to those instructions. Daggitt v. United Food and Commercial Workers Int'l Union, Local 304A, 245 F.3d 981, 985 (8th Cir. 2001). It appears from a fair reading of the record that Yellow Hawk's key defense was not that he was so intoxicated he could not be held responsible for his actions, but that A.W.S. was not telling the truth, or was coaxed into making the allegations against Yellow Hawk. Thus, there was no plain error in failing to instruct the jury on a defense that was not addressed by counsel.

The final issue before us is the district court's denial of Yellow Hawk's motion for judgment of acquittal. We review the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict, thus drawing all reasonable inferences in favor of the government. United States v. Hart, 212 F.3d 1067, 1070 (8th Cir. 2000), cert. denied, 531 U.S. 1114 (2001). The trial evidence supports the verdict that the sexual acts were not a result of the victim's consent in this case, and that Yellow Hawk penetrated the victim as proscribed in each count of the indictment.

## III.  CONCLUSION

We reject Yellow Hawk's claims on appeal. Clearly, appellate counsel attempts to raise ineffective assistance of counsel claims by way of contending that the failures of the trial counsel were so obvious, the district court should have righted counsel's alleged wrongs of its own volition sua sponte. We refrain from furthering this argument. "Except where a miscarriage of justice would obviously result or the outcome would be inconsistent with substantial justice, ineffective assistance of counsel issues are more appropriately raised in collateral proceedings because they

normally involve facts outside the original record." <u>United States v. Woods</u>, 270 F.3d 728, 730 (8th Cir. 2001).

The conviction and sentence are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.