**Thomas Yellow HAWK, Jr., Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. CIV. 02–3044.
No. CR. 00–30032.

United States District Court,
D. South Dakota,
Central Division.

April 8, 2004.

Thomas Yellow Hawk, Littleton, CO, pro se.

Judith K. Grunewaldt, Tieszen Law Office, Randolph J. Seiler, U.S. Attorney's Office, Pierre, SD, for Respondent.

## ORDER

KORNMANN, District Judge.

Petitioner, Thomas Yellow Hawk, Jr. ("Yellow Hawk"), was convicted by a jury of three counts of sexual abuse in violation of 18 U.S.C. §§ 1153 and 2242. I presided over the trial. Yellow Hawk's convictions and sentence were affirmed on appeal. *See United States v. Yellow Hawk,* 276 F.3d 953 (8th Cir.2002). Yellow Hawk then timely filed a motion (Doc. 1) under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

The petition was promptly referred to United States Magistrate Judge Mark Moreno. Unfortunately, the magistrate was never notified of the referral by the Clerk's office. A deputy clerk simply filed the Order of Referral which I had issued and did not provide any notice to the magistrate which notice of referral should have been immediately provided. This type of delay and error is embarrassing to the court. I probably also should have noticed that we had heard nothing from the magistrate and made inquiry of him as to when he would complete his work. The magistrate did nothing until his office fortunately received a telephone call on January 28, 2004, from a relative of Yellow Hawk, inquiring what was happening as to the 28 U.S.C. § 2255 case. The magistrate was, of course, alarmed about such a long delay and then immediately commenced work on this file. I have never previously known the magistrate to be dilatory in any way and he was not in this case.

The magistrate issued a report and recommendation (Doc. 9) on February 19, 2004. He declined to appoint counsel or to conduct an evidentiary hearing. He provided the required notice to petitioner pursuant to 28 U.S.C. §§ 636(b) and 8(b) of the § 2255 rules. I have now read and carefully considered the report and recommendation. No objections have been filed within the required ten working days, even allowing an additional three days for service by mail. Adding three days for mailing and excluding weekend days, the deadline for the objections to be filed would have been March 9, 2004. The ten day requirement is far too short when dealing with a prisoner in federal custody who is not represented by a lawyer and is trying to go through the cumbersome penitentiary mailing system. Long delays in the delivery of mail are common even for people not in custody. After receiving the report and recommendation, the inmate would be required to draft the objections and see that the objections were filed by the deadline. *See* Rule 8(b)(2), Section 2255 Proceedings. The ten day requirement, however, as set forth in the described rule could be said to apply only if there has been an evidentiary hearing. Here, there has been none. Regardless, I believe that I would have the authority pursuant to Fed.R.Civ.P. 6(b) to *sua sponte* extend the time for filing objec-

tions. This authority stems from Rule 12 of the § 2255 Rules and the fact that the Section 2255 Rules do not provide for any extension of time or manner of computation of time. Justice would require an extension, given all the delay that has already occurred here through no fault of the petitioner. There is nothing to indicate that the mailing by the magistrate was not accomplished. I therefore assume that Mr. Yellow Hawk received the report and recommendation with the notice that objections must be made within ten days or they are waived. There has been no request by Mr. Yellow Hawk to extend the time. The notice of the time in which to file objections is somewhat misleading unless you are a lawyer and understand the rules as to time and mailing. It is possible that Mr. Yellow Hawk may have failed to understand what he had to do within a given time frame. He may have thought that the ten days had already run and thus he could no longer file any objections. I hope this is not the case. I have intentionally waited until the present date to see if Mr. Yellow Hawk would file anything and he has not done so.

I clearly recall this trial. The government's case was very strong. There is very seldom an eye witness, especially a non-intoxicated person, to a claimed sexual assault. Here, there was. The child who observed the defendant three times sexually abusing the child's step-mother was a very good witness. Counsel for the defendant could not "shake him" during cross examination. The child had nothing to gain by revealing to the victim's sister what he had seen. He had nothing to gain by his testimony at trial. On the other hand, the defendant's testimony was that he did not remember anything after passing out on the couch. He did not deny the alleged offenses. The jury was no doubt offended by the testimony of the young man to the effect that the defendant, knowing that the child had witnessed the sexual assaults, brought the child into the bedroom and encouraged him to sexually assault the victim as well. They could well have concluded, as I did, that the defendant did this to attempt to "implicate" the child and to prevent or discourage the child from telling what he had seen, the reason being that he would be implicating himself as well.

The magistrate correctly sets forth what I said, in part, at the sentence hearing. The evidence and the case against the defendant were overwhelming. I could not fathom why the defendant went to trial rather than entering into a plea agreement. There was nothing humanly possible that trial counsel for Yellow Hawk could have done to prevent these convictions. Even assuming errors on the part of trial counsel (which I do not find to be the case), there is no reasonable probability that the result of the trial would have been different. I have full confidence in the outcome of this trial.

The report and recommendation should be adopted. The magistrate has correctly set forth the facts and the law. The petition or motion should be denied and the case dismissed with prejudice.

Now, therefore,

IT IS ORDERED, as follows:

1) The motion to vacate, set aside, or correct sentence by a person in federal custody (Doc. 1) is denied.

2) The report and recommendation (Doc. 9) of the magistrate is adopted.

3) The case is dismissed with prejudice.

## REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

MARK, United States Magistrate Judge.

[¶ 1] The above-captioned 28 U.S.C. § 2255 case was referred to this Court by

the District Court[1] pursuant to 28 U.S.C. 636(b)(1)(B), for the purpose of conducting any necessary hearings, including evidentiary hearings, and submitting proposed findings of fact and recommendations for disposition thereof.

[¶ 2] Having carefully reviewed and considered all of the records on file and being fully advised in the premises, the Court does now make and propose the following findings, report and recommendation for disposition of the case.

## I.

[¶ 3] Petitioner, Thomas Yellow Hawk, Jr. (Yellow Hawk), an Indian, was indicted in April, 2000 on three counts of sexual abuse in violation of 18 U.S.C. §§ 1153 and 2242. The offenses charged involved sexual acts that Yellow Hawk engaged in with Thomasine Whirlwind Soldier (Thomasine) four years ago at St. Francis on the Rosebud Indian Reservation in South Dakota. On February 15, 2001, a jury found Yellow Hawk guilty of all three counts. The trial court thereafter denied Yellow Hawk's post-trial motions and sentenced him to concurrent 70–month sentences of imprisonment and two years of supervised release on each count.

[¶ 4] Subsequently, Yellow Hawk appealed his conviction and sentence. The Eighth Circuit Court of Appeals, however, affirmed the trial court's judgment in a decision rendered on January 10, 2002. *United States v. Yellow Hawk*, 276 F.3d 953 (8th Cir.2002).

[¶ 5] Later that same year, Yellow Hawk filed a motion under § 2255 to vacate, set aside or correct his sentence. The District Court thereafter ordered Respondent, United States of America (Government) to serve and file an answer or responsive pleading and supporting memorandum. The District Court, at the same time, referred the case to this Court to handle on a report and recommendation basis.

[¶ 6] The Government then filed a timely answer and supporting brief and Yellow Hawk responded with a traverse to the same. No discovery or expansion of the record has been sought by either party.

## II.

[¶ 7] On January 28, 2000, Yellow Hawk was with his close friend, Merrill Whirlwind Soldier (Merrill), assisting Merrill with repair work on a car at the latter's garage. Yellow Hawk, through his friendship, also knew Merrill's wife, Thomasine. The two men began drinking around 5:30 p.m. that day and continued to do so until well into the early morning hours of the following day. Thomasine joined Yellow Hawk and Merrill in the evening and again in the early morning hours. All three of them consumed a large quantity of alcohol during their time together.

[¶ 8] Sometime after 7:30 a.m., Yellow Hawk "passed out" and was carried to a couch in the Whirlwind Soldier's home. Merrill and Thomasine went to their bedroom and fell asleep.

[¶ 9] Merrill's 13–year–old son, A.W.S. (d/o/b 9–15–86), was living with he and Thomasine at the time and was the only witness to the charged crimes. A.W.S. observed Yellow Hawk go into Merrill and Thomasine's bedroom, take her pants off and engage in sexual acts with her. Merrill and Thomasine were not awake while this occurred. According to A.W.S., Yellow Hawk called A.W.S. to the living room a short time later for a "man to man talk." A.W.S. testified that Yellow Hawk then took A.W.S. back to the bedroom and tried to get the boy to touch Thomasine, but he

---

**1.** The Honorable Charles B. Kornmann, United States District Judge, presiding.

refused to do so. After the two left the bedroom, A.W.S. took Yellow Hawk home.

[¶ 10] At trial, Thomasine acknowledged that she had no recollection of anything that happened after she and Merrill went to bed and the time she woke up around noon. She did remember going to bed with a t-shirt, blue spandex pants, socks and underwear on and waking up naked from the waist down and hanging halfway off the bed.

[¶ 11] The next day, A.W.S. told Merrill's sister, Connie Whirlwind Soldier (Connie), what he had seen Yellow Hawk do. Connie and her mother, Rosalie Whirlwind Soldier, then told Thomasine of A.W.S.'s accusations and Thomasine reported the incident to law enforcement authorities the following day. An Indictment was returned against Yellow Hawk about three months later.

[¶ 12] The jury trial lasted two days. Yellow Hawk himself testified along with six other defense witnesses. After three hours of deliberations, the jury found Yellow Hawk guilty of all three sex offenses.

### III.

[¶ 13] Although Yellow Hawk does not request or otherwise seek to have counsel appointed for him, the Court believes it should decide whether he is entitled to the appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, in view of the nature of the proceeding, the issues raised and the relief sought.

[¶ 14] A court may appoint counsel for a prisoner seeking § 2255 relief when "the interests of justice so require." § 3006A(a)(2)(B); Rule 8(c) of the Rules Governing Section 2255 Proceedings (§ 2255 Rules). If no evidentiary hearing is necessary, the appointment of counsel is discretionary.

[¶ 15] In exercising its discretion, a court should first determine whether a *pro se* prisoner has presented a non-

frivolous claim. *See Abdullah v. Norris,* 18 F.3d 571, 573 (8th Cir.), *cert. denied,* 513 U.S. 857, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994). If the prisoner has raised only claims that are frivolous or clearly without merit, the court should dismiss the case on the merits without appointing counsel. *Id.*; Rule 4 of the § 2255 Rules. If the prisoner has presented a non-frivolous claim, the court should then determine whether, given the particular circumstances of the case, the appointment of counsel would benefit the prisoner and the court to such an extent that "the interests of justice so require" it. *Nachtigall v. Class,* 48 F.3d 1076, 1081 (8th Cir.1995); *Abdullah,* 18 F.3d at 573; § 3006A(a)(2)(B). In deciding whether the appointment of counsel is required for a prisoner seeking § 2255 relief with non-frivolous claims, the court should consider the factual and legal complexities of the case, the prisoner's ability to investigate and present claims, the existence of conflicting testimony and any other relevant factors. *Nachtigall,* 48 F.3d at 1081–82; *Hoggard v. Purkett,* 29 F.3d 469, 471 (8th Cir.1994); *Abdullah,* 18 F.3d at 573.

[¶ 16] Applying these factors, the Court concludes that the interests of justice do not require that Yellow Hawk be provided with counsel. The claims Yellow Hawk raises in his Motion, while not patently frivolous or devoid of any colorable merit on their face, nonetheless are not ones that involve complex legal or factual issues or ones that arise out of conflicted testimony or require further fact investigation. *Nachtigall,* 48 F.3d at 1082; *Hoggard,* 29 F.3d at 472. It is evident that Yellow Hawk understands the issues involved and is capable of presenting his claims in a logical and coherent manner. *Id.* His Motion, supporting Memorandum and traverse to the Government's Answer are well written and contain proper cita-

tions to relevant legal authority so as to enable the Court to determine whether § 2255 relief is warranted. *Nachtigall,* 48 F.3d at 1082. Finally, Yellow Hawk's claims can easily be resolved on the basis of the court record. *Hoggard,* 29 F.3d at 472. The Court therefore finds it unnecessary to appoint counsel for Yellow Hawk and declines to do so.

## IV.

[¶ 17] Yellow Hawk requests that the Court grant him an evidentiary hearing on the Motion. Before doing so, the Court must determine, in accordance with Rules 4(b) and 8(a) of the § 2255 Rules, whether such a hearing is required in this instance.

[¶ 18] An evidentiary hearing need not be held (1) if the prisoner's allegations, accepted as true, would not entitle him to relief; or (2) if the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible or are conclusions rather than statements of fact. *Delgado v. United States,* 162 F.3d 981, 983 (8th Cir.1998) (quoting *Engelen v. United States,* 68 F.3d 238, 240 (8th Cir.1995)). Likewise, an evidentiary hearing is not required "where the files and records of the case conclusively show that the prisoner is not entitled to relief." *Standing Bear v. United States,* 68 F.3d 271, 272 (8th Cir.1995), *cert. denied,* 517 U.S. 1147, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996); *see also Kingsberry v. United States,* 202 F.3d 1030, 1031 (8th Cir.2000); *Holloway v. United States,* 960 F.2d 1348, 1351 (8th Cir.), *cert. denied,* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000).

[¶ 19] Yellow Hawk's claims are ones that are capable of resolution from the record. *Blankenship v. United States,* 159 F.3d 336, 337–39 (8th Cir.1998), *cert. denied,* 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 699 (1999); *Payne v. United States,* 78 F.3d 343, 347 (8th Cir.1996);

*Rogers v. United States,* 1 F.3d 697, 699 (8th Cir.1993); *see also United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Dall v. United States,* 957 F.2d 571, 572 (8th Cir.1992). After close scrutiny of the record, the Court is convinced that Yellow Hawk cannot prevail on his claims. *See Cheek v. United States,* 858 F.2d 1330, 1333 (8th Cir.1988); *see also Bradshaw v. United States,* 153 F.3d 704, 708 (8th Cir.1998). As such, Yellow Hawk's request for an evidentiary hearing is denied and the Court shall proceed to dispose of his Motion in a summary manner as "justice dictates." *See* Rules 4(b) and 8(a) of the § 2255 Rules.

## V.

[¶ 20] Yellow Hawk raises two ineffective assistance of counsel claims. First, he maintains that trial counsel failed to properly investigate and call witnesses in the defense of his case. Second, he contends that counsel failed to explore a viable impotency defense by having him examined and/or tested to corroborate his inability to attain an erection while intoxicated.

## A.

[¶ 21] Almost 20 years ago, the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) established the legal principles that govern claims of ineffective assistance of counsel. A prisoner making an ineffective assistance claim must show (1) that his counsel's performance was deficient, that is, unreasonable under prevailing professional norms, and (2) that the deficient performance prejudiced his defense. *Blankenship,* 159 F.3d at 338 (8th Cir. 1998) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). Both prongs of this test must be satisfied in order for there to be a

Sixth Amendment violation, *Strickland,* 466 U.S. at 687, 700, 104 S.Ct. 2052.

### B.

[¶ 22] The purpose of ineffectiveness review is not to grade counsel's performance, but rather, to determine whether a prisoner's Sixth Amendment right to counsel has been violated. 466 U.S. at 688–89, 697, 104 S.Ct. 2052. In the review process, a court must recognize that representation is an art and an act or omission that is unprofessional in one case may not necessarily be so in another. *Id.* at 693, 104 S.Ct. 2052. Because lawyers try their cases in their own ways and circumstances differ from case to case, the range of "reasonableness" must be broad. *Id.* at 689–90, 104 S.Ct. 2052. Omissions and miscues are inevitable. There is no such thing as the "perfect" trial.

[¶ 23] The burden is on the prisoner to prove, by a preponderance of the evidence, that counsel's performance was unreasonable. *Id.* at 687–88, 104 S.Ct. 2052. The prisoner must establish that counsel's acts or omissions "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052.

[¶ 24] "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. A court must avoid second-guessing counsel's strategy for obtaining a favorable result for the client. *Id.*

[¶ 25] A court must "indulge a strong presumption" that counsel's conduct was reasonable and that counsel "made all significant decisions in the exercise of reasonable, professional judgment." *Id.* at 689–90, 104 S.Ct. 2052. Counsel therefore cannot be adjudged ineffective as long as the approach taken "might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). "As is obvious, *Strickland*'s [per-formance] standard, although by no means insurmountable, is highly demanding." *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

[¶ 26] The reasonableness of counsel's performance is an objective inquiry. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052; *see also Williams v. Taylor,* 529 U.S. 362, 390–91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Darden v. Wainwright,* 477 U.S. 168, 187, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). And, because counsel's conduct is presumed reasonable, a prisoner must demonstrate that no reasonable or competent lawyer would have made the choices his counsel made.

[¶ 27] When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. 2052. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*

[¶ 28] There are no particular set of rules for counsel's conduct that can satisfactorily take into account the variety of circumstances faced by counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. *Id.* at 688–89. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.* at 689, 104 S.Ct. 2052. The Sixth Amendment is not meant "to improve the quality of legal representation", but "simply to insure that criminal defendants receive a fair trial." *Id.* at 689, 104 S.Ct. 2052.

[¶ 29] Counsel has no absolute duty to investigate particular facts or a

certain line of defense. Under *Strickland,* counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. "In any ineffectiveness case, the nature and extent of counsel's investigation, if any, must be directly assessed for reasonableness [under] the circumstances, applying a heavy measure of deference to counsel's judgment." *Id.* Thus, counsel's decision to rely on a specific defense to the exclusion of others—regardless of whether he investigated those other defenses—is a strategic one and does not amount to ineffective assistance unless the prisoner can prove that the avenue pursued was itself unreasonable. *Id.* at 688, 104 S.Ct. 2052; *Wiggins v. Smith,* 539 U.S. 510, ——, 123 S.Ct. 2527, 2535–36, 156 L.Ed.2d 471 (2003).

[¶ 30] As the *Strickland* Court observed, the reasonableness of counsel's acts depends "critically" upon "information supplied by the [prisoner] or the [prisoner's] own statements or actions." 466 U.S. at 691, 104 S.Ct. 2052. Counsel's conversations with the prisoner concerning the facts and circumstances of the case, including discussions relating to witnesses and requests made by the prisoner, are important when assessing the propriety of counsel's litigation performance. *Id.*

■ [¶ 31] Counsel is not required to present every non-frivolous defense or offer all available mitigation evidence at trial. *Burger v. Kemp,* 483 U.S. 776, 794–95, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *Strickland,* 466 U.S. at 699, 104 S.Ct. 2052. This includes an impotency defense and character witnesses. *Alexander v. Armontrout,* 985 F.2d 976, 978–79 (8th Cir.), *cert. denied,* 510 U.S. 881, 114 S.Ct. 224, 126 L.Ed.2d 180 (1993); *Huls v. Lockhart,* 958 F.2d 212, 217 (8th Cir.1992);

*Barnes v. United States,* 859 F.2d 607, 608 (8th Cir.1988).

## C.

[¶ 32] "[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. The burden is on the prisoner to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. 2052.

■ [¶ 33] When a conviction is challenged, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt as to the prisoner's guilt. *Id.* at 695, 104 S.Ct. 2052. In making this determination, a court must consider the totality of the evidence before the jury. *Id.* A jury verdict only weakly supported by the record is more likely to have been affected by counsel's errors than one containing overwhelming evidence of guilt. *Id.* at 696, 104 S.Ct. 2052. Taking into account the effect of the errors on the verdict, a court making its prejudice inquiry must ask if the prisoner has met his burden of showing that it is reasonably likely that the verdict would have been different without the errors. *Id.*

[¶ 34] While the *Strickland* test provides the necessary framework for resolving virtually all ineffective assistance of counsel claims, "there are situations in which the overriding focus on fundamental fairness may affect the analysis." *Williams,* 529 U.S. at 391, 120 S.Ct. 1495. For example, there are "situations in which it would be unjust to characterize

the likelihood of a different outcome as legitimate 'prejudice.'" 529 U.S. at 391–92, 120 S.Ct. 1495. Thus, it would not be fundamentally unfair to conclude that a defendant was not prejudiced by his counsel's refusal to cooperate in presenting perjured testimony. *See Nix v. Whiteside,* 475 U.S. 157, 175–76, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). Similarly, the impact of advocating a decidedly incorrect point of law should be regarded as a potential "windfall" to the defendant rather than the "prejudice" contemplated by *Strickland. Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *see also, Williams,* 529 U.S. at 392, 120 S.Ct. 1495.

▮ [¶ 35] Cases such as *Nix* and *Lockhart* do not justify departing from a straightforward application of *Strickland,* so as to require a separate inquiry into fundamental fairness, when the ineffectiveness of counsel deprives the defendant of a substantive or procedural right to which the law entitles him. 529 U.S. at 393, 120 S.Ct. 1495. Where the defendant has a right, like the constitutionally protected right to provide the jury with mitigating evidence that his counsel either failed to discover or failed to present, the *Strickland* "outcome-determinative" standard, *see* 466 U.S. at 691–94, 104 S.Ct. 2052, is used to decide prejudice. *Williams,* 529 U.S. at 393, 397, 120 S.Ct. 1495. In the vast majority of cases, the critical question—whether there is a reasonable probability that counsel's deficient performance would have resulted in a different outcome—remains unchanged from *Strickland. Williams,* 529 U.S. at 414, 120 S.Ct. 1495 (O'Connor, J. concurring).

### D.

[¶ 36] Applying these precepts to the instant case leads inescapably to the conclusion that Yellow Hawk has failed to meet the rigid standards of *Strickland* and its progeny and therefore cannot prevail on or obtain § 2255 relief for his ineffectiveness assistance of counsel claims.

### VI.

#### A.

▮ [¶ 37] Yellow Hawk first claims that his trial counsel was ineffective because counsel failed to investigate "any possible defense witnesses" including "Waldo Metcalf, Bruce Iron Shell, Everett Crow Good Voice, Thompson Flute, III, Rosie Whirlwind Soldier, Ina Yellowhawk, Norman Wilson, Tanya Whirlwind Soldier, Brock Green, Terry Arcoren and Stan Whipple" (hereinafter referred to by their first names). "The decision whether to call [ ] particular witness[es] is almost always strategic, requiring a balance of the benefits and risk of the anticipated testimony. *Lema v. United States,* 987 F.2d 48, 54 (1st Cir.1993); *see also Hanes v. Dormire,* 240 F.3d 694, 698 (8th Cir.2001) ("[d]ecisions relating to witness selection are normally left to counsel's judgment and this judgment will not be second-guessed by hindsight.").

[¶ 38] Trial counsel, a member in good standing of the South Dakota State Bar, has represented numerous criminal defendants in federal court within this District for many years. Of the 11 witnesses Yellow Hawk refers to, eight of them appear on the witness list counsel filed prior to the commencement of trial.[2] While it is true that counsel did not call any of the witnesses Yellow Hawk identifies, counsel states in his Affidavit that these individuals would have been additional character witnesses, whose testimony would have been cumulative and not helpful "in the face of eye witnesses." The letters Yellow Hawk has attached to his Motion from

---

2. Waldo, Everett, and Thompson are the only ones who do not appear on this list.

Waldo, Bruce, Everett, Thompson and Norman corroborate counsel's assertions. Dean Yellow Hawk, Pat Bad Hand and Mike One Star (Dean, Pat and Mike respectively), all of whom were named in counsel's witness list, provided testimony concerning Yellow Hawk's reputation in the community for truthfulness.

[¶ 39] Waldo, Bruce, Everett, Thompson and Norman would have testified as to Yellow Hawk's good character and Thomasine's bad character—both of which were inadmissible and irrelevant to Yellow Hawk's guilt or innocence because Thomasine was unconscious and therefore incapable of consenting to the sex acts Yellow Hawk performed on her. Yellow Hawk has not proffered, submitted any information or otherwise demonstrated what Rosie, Ina, Tonya, Brock, Terry or Stan's testimony would have been or how it would have helped exonerate him. *See United States v. Mangiardi*, 173 F.Supp.2d 292, 315 (M.D.Pa.2001) (when a § 2255 movant claims his trial counsel failed to call certain witnesses, he must make a specific showing as to what the evidence would have been and prove that the testimony of such witnesses would have produced a different result.) None of these individuals had personal knowledge of the events that took place that resulted in Yellow Hawk's convictions. The same is true with respect to

Waldo, Bruce, Everett, Thompson and Norman. As the District Court observed, Yellow Hawk's case was an unusual one because Thomasine's 13–year–old stepson, A.W.S. was an eye witness to all three acts of sexual abuse. Sent. Tr. 7.

[¶ 40] Based on the record before it, the Court is satisfied that trial counsel did meet the performance standards of *Strickland*. The fact that counsel's witness list contained 8 of the 11 people in Yellow Hawk's own list, indicates that counsel conducted some pre-trial investigation and had tentatively planned to use, or at least considered calling, these eight people and as many as seven others. Moreover, the handwritten notations written on the list show, or at least suggest, that counsel weighed the pros and cons of using several of the individuals named therein, but ultimately chose only to call some of them as witnesses at trial. Counsel did call, from the list, three character witnesses, Dean, Pat and Mike, two fact witnesses (besides himself), Julia Connors (Julia) and Roberta Whiting, and one witness, Faye Rabbit Roubideaux, to rebut the testimony of the eye witness. Counsel's strategic decision not to present cumulative, irrelevant and inadmissible testimony was a reasonable one and was not deficient, or more importantly, outside the bounds of effective assistance.[3] *Huls*, 958 F.2d at 217; *Girtman*

---

**3.** After all, one of Yellow Hawk's own witnesses, during cross-examination by the prosecutor, was able to "sneak in" inadmissible character evidence that painted Thomasine in less than a favorable light:

    A ... I had told her [Thomasine] and Merrill that they're bisexual and that they must like to do threesomes. Why do you guys [Thomasine and Merrill] always take Bubba [Yellow Hawk] from me and take him back to you guys' house alone with just the three of you drinking all the time? ....

          \*     \*     \*     \*     \*     \*

    Q Okay. You're just speculating about threesomes -

    A I've always speculated since this -

         \*     \*     \*     \*     \*     \*

    Q That's just a story that you're kind of throwing out there hoping that it sticks on this jury to help your husband, isn't that why you're up here saying that?

    A No, sir. May I say something?

    Q You can answer the questions, that's what you can do.

    A I said no. But there's times I've witnessed her [Thomasine] doing stuff to him [Yellow Hawk] in my house. And I was sober. They were drunk.

TTr. 292–93.

*v. Lockhart*, 942 F.2d 468, 472 (8th Cir. 1991); *see also, United States v. Pungitore*, 15 F.Supp.2d 705, 729 (E.D.Pa.1998) (in view of the evidence against the defendant, trial counsel's failure to call character witnesses would have scarcely made a difference); *Cohen v. United States*, 996 F.Supp. 110, 114 (D.Mass.1998) (trial counsel's failure to interview potential character witnesses was not ineffective assistance where counsel was faced with an abundance of physical and testimonial evidence that clearly implicated the defendant in the charged offenses).

■■■■ [¶ 41] Even if, somehow, trial counsel's performance was subpar under the first prong of the *Strickland* test, Yellow Hawk nevertheless suffered no actual prejudice as a result of it. After careful review of the trial record, the Court is convinced that there is no reasonable probability that the jury would have acquitted Yellow Hawk of the charges had counsel engaged in a more in depth pretrial investigation and called any or all of the witnesses who wrote letters and provided information about Yellow Hawk and Thomasine's characters.[4] *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Barnes*, 859 F.2d at 608; *see also, United States v. Cervantes*, No. 96C6523, 1998 WL 719932 at *3 (N.D.Ill. July 7, 1998) (trial counsel's failure to present additional evidence of

the defendant's good character at trial was a non-prejudicial omission under *Strickland*); *Cohen*, 996 F.Supp. at 114 (any assumed deficiency by reason of trial counsel's failure to present additional character witness testimony was non-prejudicial where counsel was assiduous in raising evidence of the defendant's good character during the trial). Counsel's alleged nonfeasance, therefore, did not rise to the level of ineffective assistance and cannot provide Yellow Hawk with a basis for § 2255 relief.

**B.**

■■■■ [¶ 42] Citing *Foster v. Lockhart*, 9 F.3d 722 (8th Cir.1993), Yellow Hawk claims that trial counsel was ineffective for failing to provide Yellow Hawk with a medical examination corroborating that he is "impotent while intoxicated." In *Foster*, the Eighth Circuit held that trial counsel's failure to obtain a Nocturnal Penile Tumescent (NPT) or "sleep test"[5] and pursue an impotency theory (that, if developed, would have completely exonerated the defendant), was not a reasonable choice of trial strategy and was unfairly prejudicial. 9 F.3d at 726–27.

[¶ 43] Yellow Hawk's case is distinguishable from *Foster* in several important respects. First, Yellow Hawk's trial counsel presented an impotency theory while

---

**4.** Inasmuch as Yellow Hawk has failed to include any written statements from Rosie, Ina, Tonya, Brock, Terry or Stan or provided any indication of what these individuals would have testified to if called as witnesses at trial, the Court has no way of knowing whether testimony from these witnesses, individually or as a whole, was even a mitigating factor that might well have influenced the jury's appraisal of Yellow Hawk's criminal culpability. The Court, thus, is unable to find, and will not presume in the absence of an affirmative showing, that Yellow Hawk was prejudiced by the acts or omissions of his counsel. *See Mangiardi*, 173 F.Supp.2d at 315–16 (trial counsel's failure to call a num-

ber of witnesses, including certain character witnesses, was not ineffective absent an affirmative showing of what the testimony of these witnesses would have been or how they would have helped him and affected the result of the trial.)

**5.** This test is designed to distinguish between organic or physical impotency and psychogenic or mental impotency. *See Dessi v. United States*, 489 F.Supp. 722, 730 (D.Va.1980). The test has been in use for more than three decades and is the *since qua non* test for impotence. *See Foster v. Lockhart*, 811 F.Supp. 1363, 1368 (E.D.Ark.1992).

counsel in *Foster* did not even though the defendant there was paralyzed in the "saddle area" as a result of an earlier automobile accident. 9 F.3d at 724–25. The sleep test given to the defendant one month after his trial, showed that he was "physically incapable of committing the rape in the ·manner the victim and State alleged at trial." *Id.* at 727. In addition, the defendant in *Foster* was charged with and convicted of raping the victim by forcibly penetrating her vagina with his penis. *Id.* at 724.

[¶ 44] By contrast, Yellow Hawk was found guilty of sexually abusing Thomasine by digitally penetrating her genital opening with his hand or finger and touching her vulva with his mouth and penis, all while she was passed out. A sleep test would not have demonstrated that Yellow Hawk was incapable of digitally penetrating Thomasine's vagina nor would it have shown that he was incapable of engaging in a sexual act, that is, contact between his mouth and penis and her vulva. *Alexander*, 985 F.2d at 979; *see also, Battle v. Delo*, 19 F.3d 1547, 1557 (8th Cir.1994) (distinguishing *Foster* and holding that trial counsel's failure to develop serology evidence would not have proven that the defendant was innocent.).

[¶ 45] Moreover, unlike the situation in *Foster* where the defendant's paralysis was continuous, Yellow Hawk's exact level of intoxication at the time the sexual abuse took place could not be replicated scientifically. This being the case, the validity and evidentiary value of a sleep test would have been undercut or at least highly questionable.

[¶ 46] Finally, and perhaps most importantly, Yellow Hawk, in contradiction to his counterpart in *Foster*, 9 F.3d at 725, did not request a medical examination or sleep test to help corroborate his impotency defense and the testimony offered in support of it. This fact certainly has a bearing on the reasonableness of counsel's decisions and the amount of deference that should be given to them. *See Strickland*, 466 U.S. at 691, 104 S.Ct. 2052.

[¶ 47] Counsel's failure to explore an impotency defense,[6] vis-a-vis, a medical examination and/or sleep test, was not an objectively unreasonable exercise of professional judgment. Yellow Hawk, therefore, has not shown that counsel's performance, with respect to the impotency issue,

---

**6.** As already indicated, counsel did actually present such a defense, but did not use an expert or scientific evidence to do so. Instead, counsel elicited testimony from Julia that Yellow Hawk could not maintain an erection while he was intoxicated, a subject matter which the prosecutor later inquired into:

Q Now, Julie, you've been married to Thomas for a good 13, 14 years?
A Fourteen years.
Q And you've had sexual intercourse with him, haven't you?
A Yes, I have.
Q Both when he was drunk and when he was sober?
A Not ordinarily when he's drunk.
Q Well, I'll get to that. Not ordinarily when he's drunk?
A Yes.

Q And does he have any problem getting an erection in order to do sexual intercourse?
A Yes, he did when he was drunk. He's a whiskey drinker, so.
Q And does he have a problem getting it up?
A Yeah, when he's drunk it does not get hard. No stimulation.
  *   *   *   *   *   *
Q So you're saying that there's no stimulation with you when the defendant is drunk and he can't get an erection?
A No, not with me. With him.
Q Well, I understand that. But when he is with you, he—when he is with you and when he is intoxicated, there's no stimulation and he can't get it up?
A Nope.
TTr. 296–98.

was deficient and amounted to ineffective assistance. *Alexander*, 985 F.2d at 978–79; *see also, McElvain v. Lewis*, 283 F.Supp.2d 1104, 1119 (C.D.Cal.2003) (trial counsel did not render deficient performance in failing to present evidence of the defendant's impotency as defense to rape charge where the record suggested that he was capable of sexual intercourse at the time the crime was committed, despite his insulin-dependent diabetes and his taking of Elavil, which could potentially cause impotency).

■■■ [¶ 48] Regardless, any assumed error, relating to the gathering and presentation of scientific evidence to support Yellow Hawk's alcohol induced impotency, is negated by the lack of any showing of prejudice. Even if counsel had sought and obtained a sleep test and medical opinion that Yellow Hawk's intoxication made him impotent, the Court does not believe that there is a reasonable probability that the jury would have acquitted him on any one or more of the three charges. *Strickland*, 466 U.S. at 694–96, 104 S.Ct. 2052. As the District Court remarked at sentencing:

> [T]he evidence of guilt was overwhelming. And I was not surprised that the jury did what they did. The testimony of the young man [A.W.S.—the eye witness] was very convincing. He doesn't have an ax to grind. And there was no indication that he would fabricate testifying what he saw the Defendant do.

Sent. Tr. 8. *See Barnes*, 859 F.2d at 608 (no prejudice where "overwhelming" evidence of guilt); *see also, Zambrana v. United States*, 790 F.Supp. 838, 843 (N.D.Ind.1992) (same). Nor does the omitted impotency evidence taint or otherwise undermine the reliability of the Court's confidence in the result reached by the jury. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

## VII.

[¶ 49] After due consideration of the record in light of applicable law, the Court believes that Yellow Hawk is not entitled to relief under § 2255 and that his Motion should be dismissed in its entirety. Accordingly, based on the foregoing findings of fact and legal discussion and pursuant to § 636(b) and Rule 8(b) of the § 2255 Rules, it is hereby

[¶ 50] RECOMMENDED that Yellow Hawk's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, Docket No. 1, be denied in all respects and that the case be dismissed with prejudice.

February 19, 2004.