# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2647

_____

United States of America,       *
      *
      Appellee,       *
      *  Appeal from the United States
      v.       *  District Court for the
      *  Eastern District of Missouri.
Anthony C. Littrell,       *
      *
      Appellant.       *

_____

Submitted: January 11, 2006
Filed:  March 9, 2006

_____

Before BYE and COLLOTON, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

Anthony C. Littrell ("Littrell") was convicted on one count of conspiracy to possess, manufacture, or distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; one count of conspiracy to possess pseudoephedrine knowing it would be used to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(2) and 846; three counts of manufacturing and possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); possessing pseudoephedrine knowing it would be used to manufacture

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

methamphetamine, in violation of 21 U.S.C. § 841(c)(2); and two counts of possessing a firearm in furtherance of drug-related activity, in violation of 18 U.S.C. § 924(c)(1). The district court[2] sentenced Littrell to 480 months' imprisonment and 5 years' supervised release. Littrell appeals, arguing the district court erred (1) in denying his motion for judgment of acquittal, (2) in denying his motion to suppress evidence, and (3) in denying his motions in limine. Littrell also argues his conviction must be reversed due to (1) improper vouching for government witnesses by the prosecutor, and (2) misrepresentation of evidence during closing arguments by the prosecutor. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 2002, Investigator Bobby Kile ("Investigator Kile") with the Lake Area Narcotics Enforcement Group, Lake of the Ozark, Missouri, applied for a search warrant to search a residence at 1702 Hecker Road, Owensville, Missouri. The affidavit in support of the application stated a confidential informant ("CI") had been inside the residence, which Littrell occupied. The CI had observed quantities of methamphetamine and drug paraphernalia inside the residence within forty-eight hours of the application. The CI also reported that, while inside the residence, the CI had heard a conversation between Littrell and an unknown individual relating to the production of methamphetamine. The affidavit stated the CI had provided accurate and reliable information which Investigator Kile found to be true while effecting felony arrests. The affidavit also stated a traffic stop had been conducted on a vehicle that belonged to a known associate of Littrell's and which had been seen at Littrell's residence. A search of the vehicle had uncovered methamphetamine, and one of the occupants of the vehicle was arrested. The affidavit in support of the search warrant did not mention that Littrell and his wife were present in the vehicle but were not charged for any crime in relation to the stop. The search warrant was executed on

---

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

January 22, 2002. The search uncovered methamphetamine, Lithium batteries, glassware and filters that contained powder, pressure tanks that tested positive for anhydrous ammonia, Coleman fuel, chemicals, and battery casings.

On November 30, 2002, Investigator Matthew Oller ("Investigator Oller") with the East Central Drug Task Force, Mexico, Missouri, applied for another search warrant for Littrell's residence. The affidavit in support of the application recited that Investigator Oller interviewed individuals who were caught stealing anhydrous ammonia, and one of the individuals stated he was stealing the anhydrous ammonia for Littrell. The individual stated he had been present in the past when Littrell cooked methamphetamine, at which time the individual had received a large anhydrous ammonia burn on his left arm, which the individual showed the officer. Finally, the individual stated Littrell kept a pressure tank containing anhydrous ammonia behind the residence, and that Littrell used the anhydrous ammonia to make methamphetamine. The affidavit also indicated Investigator Oller participated in the January 22 search of the residence, and recited the items uncovered during that search. Finally, the affidavit stated that a reliable CI had told the officer the CI had purchased methamphetamine from Littrell in the previous six months and had discussions with Littrell about his involvement in the production of methamphetamine. The search warrant was issued and executed on November 30, 2002. The search led to seizure of items related to the production of methamphetamine and a large amount of cash.

On January 25, 2003, Investigator Kile applied for a third search warrant for the Littrell residence. The affidavit in support thereof recited the information uncovered during the first two searches. The affidavit then stated that police had received a report from an anonymous tipster of a strong and unusual odor coming from Littrell's residence. Investigator Kile drove past the residence and detected an odor consistent with the manufacture of methamphetamine, with the strongest odor coming from the front of the residence. The search warrant was issued the same day. The search was

conducted on February 3, 2003. The search again uncovered methamphetamine and numerous items related to its manufacture and distribution.

After indictment, Littrell moved to suppress the evidence seized during the searches. The district court concluded that probable cause supported the issuance of all three warrants and denied the motion. Specifically, the district court ruled the reliability of the CI in the first warrant application was established. The court observed that the warrant application should have stated that Littrell and his wife were not arrested during the traffic stop. The court ruled, however, that this omission did not make the application false or misleading, and would have provided additional support for the probable cause determination. The court also ruled that the second and third warrants were not invalid simply because they relied on the first warrant. As to the second warrant only, the court concluded the apparently inconsistent times on the application and the warrant did not show the judge had failed to give the application adequate consideration. As to the third warrant, the court held the officer's corroboration of the anonymous informant's tip, along with the evidence located during the first two searches, provided sufficient probable cause to believe methamphetamine and related items would be found in Littrell's home. Finally, the court ruled the officers who executed the first two warrants did not exceed the scope of the warrants, both of which authorized searches for "methamphetamine" only. Although many items in addition to methamphetamine were seized, the court observed, all the items were seized from places where methamphetamine could have been secreted, and the illegal purpose of the items was immediately apparent.

Also before trial, Littrell moved in limine to exclude items seized during execution of two later warrants, and to exclude evidence related to a stop and search of his vehicle in North Carolina. The district court denied the motion as to evidence seized during a March 31, 2003, search of the residence, granted the motion as to evidence seized during a June 16, 2003, search, and denied the motion as to evidence seized during a search of Littrell's trailer in North Carolina on April 24, 2003.

During his closing argument at Littrell's trial, while summarizing for the jury the amounts of methamphetamine for which Littrell could be held responsible, the prosecutor miscalculated the amount of methamphetamine shown by the evidence. The prosecutor also made several statements regarding witnesses. The prosecutor stated that Investigator Kile was "a meticulous investigator," that "[h]e was just telling the truth as he knew it," and that "there [wa]s a reason to believe that his testimony was reasonable." The prosecutor also made other comments regarding other witnesses and their truthfulness, stating, "you knew [the] Investigator was telling the truth," and "[i]t was clear he was telling the truth." As to a witness who identified a gun, counsel stated, "And we knew it [was the gun], and we could take his testimony to the bank." The prosecutor also made statements about the truthfulness of Littrell's testimony on certain incidents. Littrell did not object to any of these comments by the prosecutor.

After Littrell was convicted, he renewed his motion for a judgment of acquittal or for a new trial, arguing that the evidence was insufficient to sustain a conviction on Count I, and that the district court had erred in its earlier rulings on the motion to suppress and the motions in limine. The district court denied the motion, concluding coconspirator testimony, along with evidence of amounts seized from Littrell, easily established the amount of methamphetamine necessary to support the 500-gram threshold. The court noted the overwhelming evidence and concluded there was no basis for a judgment of acquittal or new trial. Lastly, the court also concluded its earlier rulings were correct, and Littrell's constitutional rights were not violated.

DISCUSSION

A.    Motion for Judgment of Acquittal/New Trial

First, as to the denial of the motion for acquittal on the conspiracy count, "we must employ a very strict standard of review on this issue." United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004). We view "the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's

verdict." Id. (citation omitted). To prove the conspiracy count, the government had to show 1) an illegal conspiracy existed, 2) Littrell knew about the conspiracy, and 3) Littrell knowingly became a part of the conspiracy. United States v. Monnier, 412 F.3d 859, 861 (8th Cir. 2005). In this case, the government also had to prove the conspiracy involved over 500 grams of methamphetamine.

Littrell argues the government failed to prove that the conspiracy involved over 500 grams of methamphetamine, claiming the evidence presented only supports 244.15 grams. However, taken in the light most favorable to the government, the evidence met the 500-gram threshold. Evidence was presented regarding a large amount of methamphetamine seized from Littrell's residence; a tennis-ball sized quantity that co-defendant Michael Phillips saw Littrell manufacture; baggies of the drug a co-defendant stated came from Littrell; large amounts of pseudoephedrine seized from Littrell's property; amounts of pseudoephedrine delivered by Phillips; and still more pseudoephedrine that Phillips possessed upon his arrest. Additional evidence was presented regarding large amounts of cash and pseudoephedrine. Because a defendant in a conspiracy may be "held responsible for all reasonably foreseeable drug quantities that were in the scope of the criminal activity that he jointly undertook," United States v. Jimenez-Villasenor, 270 F.3d 554, 561 (8th Cir. 2001), we conclude the district court did not err in denying the motion for judgment of acquittal or new trial.

B.    Motion to Suppress

Littrell next argues the district court erred in denying his motion to suppress, claiming probable cause did not exist to support the first warrant, and that the second and third warrants were obtained based on evidence illegally seized during the first search. "When considering a suppression order, we review the district court's factual findings for clear error and review de novo its conclusion about whether the Fourth Amendment was violated during the search." United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004). We will affirm the district court's decision on a suppression

motion "unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, [we are] left with the definite and firm conviction that a mistake has been made." United States v. Perez-Perez, 337 F.3d 990, 993-94 (8th Cir. 2003) (citation omitted).

Littrell claims the reliability of the CI, whose information provided part of the basis for issuance of the first warrant, was not established sufficiently. "Information from a confidential informant may be sufficient to establish probable cause if it 'is corroborated by independent evidence' or if the informant 'has a track record of supplying reliable information.'" United States v. Vinson, 414 F.3d 924, 930 (8th Cir. 2005) (quoting United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002)). Although Littrell cites several cases wherein greater evidence of a CI's reliability was presented to the issuing magistrate, such does not demonstrate the lack of reliability of the CI in this case. The CI's reliability was established in the affidavit supporting the first warrant application, wherein Investigator Kile stated he had worked with the CI for three years and the CI had provided accurate and reliable information Investigator Kile found to be true in effecting felony arrests. The first warrant application also contained information sufficient to show probable cause for the search. Thus, the first search warrant was valid. The second and third warrant applications contained sufficient indicia of probable cause, partially based on the evidence obtained during the first search. Thus, each of the warrant applications was supported by probable cause. Accordingly, the district court did not err in denying the motion to suppress.

C.    Improprieties in Government's Closing Argument

Finally, Littrell argues the prosecutor made improper remarks vouching for the credibility of witnesses and improperly calculated drug quantities during closing argument. "The district court enjoys broad discretion in controlling closing arguments. We will overturn a conviction only for a clear abuse of that discretion." United States v. Beaman, 361 F.3d 1061, 1064 (8th Cir. 2004). Littrell did not object or otherwise bring these issues before the trial court, however, so we review for plain

error. United States v. Chauncey, 420 F.3d 864, 876 (8th Cir. 2005). "We will reverse under plain error review only if the error prejudices the party's substantial rights and would result in a miscarriage of justice if left uncorrected. Plain error review is extremely narrow and is limited to those errors which are so obvious or otherwise flawed as to seriously undermine the fairness, integrity, or public reputation of judicial proceedings." United States v. Yellow Hawk, 276 F.3d 953, 955 (8th Cir. 2002) (citations omitted). Put another way, "[i]f an arguably improper statement made during closing argument is not objected to by defense counsel, we will only reverse under exceptional circumstances." United States v. Eldridge, 984 F.2d 943, 947 (8th Cir. 1993) (citation omitted).

The prosecutor made several statements during his closing that, at first glance, arguably appear to be a form of vouching for witness credibility. Comments were made about Investigator Kile being "a meticulous investigator," "telling the truth as he knew it," and there being "a reason to believe that his testimony was reasonable," as well as other statements. Other comments were made about how it was clear and how the jury could know another investigator was telling the truth. Finally, the prosecutor stated the jury "could take [one witness's] testimony to the bank." Closer review, however, shows the statements were not so prejudicial as to warrant reversal. "Attempts to bolster a witness by vouching for his credibility are normally improper." United States v. Jackson, 915 F.2d 359, 361 (8th Cir. 1990) (citation omitted). Facially, these statements may appear improper but, when taken in the proper context, the prosecutor's statements were neither improper nor unduly prejudicial. See United States v. Vallie, 284 F.3d 917, 922 (8th Cir. 2002). A careful review of the transcript of the closing arguments convinces us the comments were made as part of the prosecutor's review of the evidence before the jury. See Jackson, 915 F.2d at 361. The prosecutor's comments about Investigator Kile being meticulous were made during his recitation of the evidence showing the investigator's methods in conducting an investigation. The comment about Investigator Kile "telling the truth as he knew it" was made in the context of the prosecutor explaining how Investigator Kile treated

defense counsel during defense counsel's long cross examination. The comment that there was a reason to believe Investigator Kile's testimony was reasonable was made at the end of a statement showing how he could have lied about the defendant to bolster the government's case, but did not do so. Similarly, comments about how the jury could know the other investigator was telling the truth came while the prosecutor was explaining how the evidence supported that investigator's testimony. The last comment, that the jury could take to the bank the testimony by the government witness regarding the gun, was made after the prosecutor explained the certainty with which that witness identified the gun.

"While a prosecutor may not vouch for the credibility of witnesses based on facts personally known to the prosecutor but not introduced at trial, 'that does not mean the prosecutor cannot argue that the fair inference from the facts presented is that a witness had no reason to lie.'" United States v. Eley, 723 F.2d 1522, 1526 (11th Cir. 1984) (quoting United States v. Bright, 630 F.2d 804, 824 (5th Cir. 1980)). This court has cited the Eleventh Circuit's opinion in Eley on several occasions. See, e.g., United States v. Grey Bear, 883 F.2d 1382, 1392 (8th Cir. 1989); United States v. DeVore, 839 F.2d 1330, 1333 (8th Cir. 1988). We conclude the prosecutor's comments were not improper. The prosecutor did not put his personal reputation behind the testimony of its witnesses. "[P]rosecutors, as well as defense lawyers, may and must argue as to the credibility of witnesses, and in a case of this kind the issue of credibility is critical. The very nature of closing argument requires a detailed analysis of the testimony of each witness and the inferences to be drawn from the evidence." Grey Bear, 883 F.2d at 1392. We conclude the prosecutor "merely suggested reasons why the jury might find the government's witnesses to be more credible." See United States v. Papajohn, 212 F.3d 1112, 1120 (8th Cir. 2000), *abrogated on other grounds by* Crawford v. Washington, 541 U.S. 36 (2004). Further, Littrell did not object to any of the statements by the prosecutor that he now challenges. Nor did Littrell request a curative instruction or move for a mistrial. Even

if we were to assume the prosecutor's statements constituted impermissible vouching, we would not exercise our discretion and grant Littrell plain error relief.

As to the prosecutor's comments that Littrell was not telling the truth, these comments again were not improper. United States v. French, 88 F.3d 686, 688-89 (8th Cir. 1996). However, even assuming the comments were in some way improper, Littrell would not be entitled to the relief he seeks. To establish an entitlement to relief under the plain error doctrine, Littrell must show prejudice–that is, a reasonable probability that the outcome would have been different absent the alleged error. United States v. Dominguez-Benitez, 542 U.S. 74, 81-82 (2004). "If prosecutorial misconduct allegedly has occurred, a reviewing court looks into its prejudicial impact by assessing the cumulative effect of the misconduct, determining if the court took any curative actions, and gauging the strength of the evidence against the defendant in the context of the entire trial." Id. In this case, any statements regarding Littrell's truthfulness were not unfairly prejudicial, for the government presented overwhelming evidence of Littrell's guilt. The district court also instructed the jury that closing arguments are just that, argument, and are not evidence of anything. As noted in French, this court "has denied a reversal of a conviction when a prosecutor has used stronger and more personal language." Id.; see United States v. Peyro, 786 F.2d 826, 831-32 (8th Cir. 1986) (affirming conviction in which prosecutor made statements such as, "The man is an obvious liar."). The Peyro court affirmed the conviction although defense counsel had objected to the prosecutor's statements. In this case, no objections were made. We do not find the comments about Littrell's truthfulness to be improper. Further, we find no plain error so prejudicial as to warrant reversal in this case.

Finally, the erroneous calculation of drug quantity (which the government admits occurred) did not unfairly prejudice the defendant. "We have indicated that an improper argument is less likely to have affected the verdict in a case when the evidence is overwhelming than in a case where the evidence is weak." United States

v. Cannon, 88 F.3d 1495, 1503 (8th Cir. 1996). As noted above with regard to Littrell's motion for judgment of acquittal, ample evidence supported the finding of drug quantity exceeding 500 grams. Furthermore, the district court instructed the jury that arguments were not evidence, and that it should make its findings based on the evidence presented. The district court also instructed the jury that certain charts and summaries, presented to help explain evidence, were not evidence or proof of any facts. The court instructed that if these charts and summaries did not correctly reflect the facts shown by the evidence, the jury was to disregard the charts and summaries and determine the facts from the evidence presented. Moreover, even if the jury were misled by the closing argument, there is no showing of prejudice to Littrell. It is undisputed that the government proved a minimum of 244 grams of methamphetamine relating to the conspiracy, which would produce an advisory guidelines range of 168 to 210 months' imprisonment, and the court imposed a sentence of only 120 months' imprisonment on that count. In sum, the prosecutor's closing argument did not "undermine the fairness, integrity, or public reputation of judicial proceedings." Yellow Hawk, 276 F.3d at 955. Given the district court's broad discretion in controlling closing arguments, and Littrell's failure to object, we conclude that exceptional circumstances warranting reversal are not present in this case.

D.     Motions in Limine

Finally, Littrell contends the district court erred in denying his motions in limine. Reviewing the district court's decision denying the motions in limine for an abuse of discretion, United States v. Gianakos, 415 F.3d 912, 919 (8th Cir. 2005), we conclude that no error occurred. See 8th Cir. R. 47B.

### CONCLUSION
For the foregoing reasons, we affirm in all respects.

_____

-11-