# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3250

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Northern District of Iowa. |
| | * | |
| David Lynch, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  February 12, 2003

Filed:  March 13, 2003

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and BYE, Circuit Judges.

_____

BOWMAN, Circuit Judge.

David Lynch entered a conditional guilty plea to conspiracy to manufacture and distribute more than fifty grams of methamphetamine, to the manufacture and distribution of more than fifty grams of methamphetamine, as well as to being a felon in possession of a firearm.  Lynch reserved his right to appeal the denial of his motion to suppress and, on appeal, urges that the District Court[1] erred when it determined

_____

[1]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.  Judge Melloy has since been appointed United States Circuit Judge for the Eighth Circuit and currently serves in that capacity.

that the scope of the search warrant was adequately supported by probable cause. When considering a district court's denial of a motion to suppress, we review the court's factual determinations for clear error and its conclusions of law de novo. United States v. Ervasti, 201 F.3d 1029, 1038 (8th Cir. 2000). We affirm.

Lynch contends that the search warrant was over-broad and that the required "nexus between the contraband and the place to be searched" was absent. United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000). Rather, he argues, the facts only supported the issuance of a warrant for the search of the outbuildings on his property and not his residence, where the evidence sought to be suppressed was found. We disagree. The information presented in the application for the search warrant and in Officer Furness's accompanying affidavit clearly establish probable cause for the search of the entire property. See Application for Search Warrant at 6-8. The affidavit recites that the police observed two suspected drug dealers (Delwin Troy Thompson, Jr. and Lynch) arrive in an automobile at Lynch's property and enter Lynch's residence. The two men left the residence shortly thereafter and Thompson was observed carrying two small items, which he placed into the front of his car. Lynch then walked behind one of the outbuildings and returned carrying a large bucket, which he placed into a storage box that he took from his own car. He then placed the storage box into Thompson's trunk. After Thompson left the Lynch property, police stopped him (after a brief chase) because his license was suspended and searched his car. They found two packages of lithium batteries and what they suspected (and Thompson stated) was anhydrous ammonia in the storage box in his trunk (lithium and anhydrous ammonia are precursors to methamphetamine). This alone would support the issuance of a warrant to search the entire property; however, there was more.

Furness's warrant application and affidavit also recited information from one or more confidential informants that Lynch allowed Thompson to use his home to cook methamphetamine, that Lynch sold anhydrous ammonia to Thompson, and that

Lynch was dealing marijuana. In addition, the warrant application listed prior arrests and convictions of Thompson and Lynch for various narcotics crimes. Finally, the application referenced a relatively recent search of Thompson's residence that turned up materials and substances used in the so-called "Nazi method" of methamphetamine manufacture.[2] In these circumstances, we conclude there was "a fair probability that contraband or evidence of a crime [would] be found" on Lynch's property, that the warrant was properly issued, and that the District Court did not err when it refused to suppress the evidence seized from Lynch's residence. Illinois v. Gates, 462 U.S. 213, 238 (1983).

Accordingly, we affirm the denial of Lynch's motion to suppress.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]The "Nazi method" makes use of readily available ingredients and yields a very pure product. The technique takes its name from the method perfected and used by German soldiers during World War II to produce methamphetamine so they could stay alert while in the field. Morning Edition: Theft of Anhydrous Ammonia from Farmers and Fertilizer Dealers Around the Midwest (NPR radio broadcast, October 25, 1999), available at 1999 WL 32926461; Carrick Mollenkamp, DEA Fights Rise of Drug in Southeast, Wall St. J., July 1, 1998, available at 1998 WL-WSJ 3500023.