# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3365

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Willie Vinson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 17, 2005
Filed: July 14, 2005

_____

Before WOLLMAN, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Willie Vinson pled guilty to possession with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Vinson reserved the right to appeal several issues that he raised unsuccessfully in the district court. We have considered Vinson's arguments, and we affirm.

I.

On July 30, 1999, state law enforcement officers executed a search warrant at Vinson's home in St. Paul, Minnesota, and discovered 95.7 grams of cocaine base and

a handgun. Vinson then began to serve a term of imprisonment in the State of Minnesota on unrelated charges. In December 1999, while Vinson was imprisoned, the county prosecutor in Minnesota brought charges against Vinson based on the search in July 1999. The State lodged a detainer against Vinson based on the new charges, and Vinson then filed a written request for disposition of the new charges. The record reflects that the state charges subsequently were dismissed by a state court on the ground that the State's failure to bring the matter to trial within six months of Vinson's written request violated Minnesota's Uniform Mandatory Disposition of Detainers Act. Minn. Stat. § 629.292, subd. 3.

Vinson was released from prison in July 2002. On June 9, 2003, state law enforcement officers developed information that Vinson was in possession of a large quantity of cocaine. Officers executed a search warrant at Vinson's home, and seized 10.3 grams of cocaine, 470.9 grams of marijuana, a handgun, and ammunition. An additional 48.8 grams of cocaine and 6.2 grams of cocaine base were found in Vinson's vehicle.

State investigators referred the evidence gathered during the June 2003 investigation and the July 1999 investigation (which resulted in the dismissed state court charges) to federal authorities. The United States Attorney eventually sought and obtained an indictment alleging that in July 1999, Vinson possessed with intent to distribute more than 50 grams of cocaine base, and unlawfully possessed a firearm as a previously convicted felon, and further that in June 2003, Vinson possessed with intent to distribute over five grams of cocaine base, possessed a stolen firearm, and unlawfully possessed a firearm as a previously convicted felon.

Vinson moved to dismiss the indictment on several grounds. He asserted that the federal government's prosecution based on the July 1999 investigation violated the Interstate Agreement on Detainers, 18 U.S.C. App. 2, that the federal charges subjected him to double jeopardy in violation of the Fifth Amendment, and that the

indictment violated a non-prosecution agreement that Vinson had reached with local law enforcement officials. The district court[1] rejected these arguments.

On the day his trial was to begin, Vinson entered into a plea agreement with the government. Pursuant to the agreement, Vinson pled guilty to possession with intent to distribute more than 50 grams of cocaine base on or about July 30, 1999. The government agreed to recommend a two-level reduction under the United States Sentencing Guidelines for acceptance of responsibility. Vinson waived his right to appeal his sentence unless it resulted from an offense level greater than 32, but reserved his right to appeal the district court's denial of his pre-trial motions. He now argues that the district court erred in refusing to dismiss his indictment based on the IAD or a non-prosecution agreement, that the district court erred in denying his motion to suppress evidence from the 1999 search, and that the district court should have decreased his offense level by three levels rather than two for acceptance of responsibility.

II.

The Interstate Agreement on Detainers ("IAD") provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice

---

[1] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, adopting the Report and Recommendations of the Honorable Jonathan G. Lebedoff, Chief United States Magistrate Judge for the District of Minnesota.

of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint . . . .

18 U.S.C. App. 2, § 2, Art. III(a). Minnesota and the United States each is a party "State" under the Agreement. 18 U.S.C. App. 2, §2, Art. II(a); *see also United States v. Mauro*, 436 U.S. 340, 362 (1978).

Vinson argues that because charges filed against him by the State of Minnesota in December 1999 were dismissed after the State failed to prosecute him within six months of his written request, the IAD bars a later prosecution *by the United States* of criminal charges based on the same facts that gave rise to the dismissed state charges. We disagree. The IAD requires when there "is pending in any other party State" an indictment that gives rise to a detainer against a prisoner, and when the prisoner makes written request for disposition of the indictment, the prosecuting officer in that "other party State" must proceed with the prosecution within 180 days of the request. In 1999, however, the United States was not the prosecuting jurisdiction in Vinson's case. The 1999 indictment was pending only in the State of Minnesota. The United States did not lodge a detainer against Vinson, and Vinson did not provide written notice to the United States of his place of imprisonment or his request for disposition of the charges filed in state court. In fact, the record shows that federal authorities were not even aware of the 1999 investigation until after the 2003 investigation, at which time state officers referred both the 1999 and 2003 matters to federal authorities for possible prosecution. The disposition request that Vinson filed was pursuant to Minnesota's separate Mandatory Disposition of Detainers Act and not pursuant to the IAD, but even if the IAD had been implicated by his first detainer, the IAD does not provide that the noncompliance of one party State may be attributed to another sovereign party.

Vinson also contends that the federal prosecution subjects him to jeopardy twice for the same offense, and thus violates his rights under the Fifth Amendment.

-4-

We agree with the district court, however, that jeopardy never attached to the state charges filed in December 1999, which were dismissed before any jury was empaneled and sworn, *see Crist v. Bretz*, 437 U.S. 28, 35 (1978), so no subsequent prosecution is prohibited by the Double Jeopardy Clause. Vinson's double jeopardy argument, moreover, overlooks the separate sovereignty of the United States and the State of Minnesota. *See United States v. Leathers*, 354 F.3d 955, 959-60 (8th Cir. 2004). While one sovereign may not place an individual in jeopardy twice for the same acts, a subsequent prosecution by a separate sovereign does not violate the Constitution. And while the Supreme Court has suggested that a state prosecution that is merely a "sham and a cover" for a duplicative federal prosecution may be impermissible, *Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959), this possibility affords no basis for relief in this case. Vinson was the subject of a subsequent federal, not state, prosecution, *see Leathers*, 354 F.3d at 960, and more importantly, Vinson has offered no evidence that the federal prosecution operated as a "sham and a cover" to disguise a second prosecution in which the United States Attorney was a mere "tool" of the State of Minnesota. *See Bartkus*, 359 U.S. at 123-24. We therefore conclude that the district court correctly denied Vinson's motion to dismiss based on the Double Jeopardy Clause of the Fifth Amendment.

Vinson next contends that his "speedy trial" rights under the Sixth Amendment were infringed by the government's prosecution in October 2003 of charges that stemmed from a search that occurred more than three years earlier, in July 1999. This contention is without merit, because the Sixth Amendment's guarantee of a "speedy and public trial" applies to the interval between accusation and trial, and does not obligate the United States to make speedy accusations. *United States v. Marion*, 404 U.S. 307, 313 (1971). Vinson refers obliquely in an argument heading to "pre-indictment delay," which suggests a claim based on the Due Process Clause of the Fifth Amendment. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977); *Marion*, 404 U.S. at 324. We see no indication that such a due process claim was raised in the district court. In any event, Vinson has not demonstrated prejudice arising from pre-

indictment delay, *Lovasco*, 431 U.S. at 790, or deliberate delay by the government to gain a tactical advantage, both of which are required to establish a deprivation of liberty without due process of law based on pre-indictment delay. *United States v. Grap*, 368 F.3d 824, 829 (8th Cir. 2004).

Vinson also argues that his prosecution based on the evidence seized in 1999 violates a non-prosecution agreement that he reached with a deputy sheriff in Minnesota. Vinson asserts that he agreed to cooperate, "made three buys for the sheriff," and "was told that the case would be dismissed altogether." (Appellant's Br. at 32). The district court found as a matter of fact that even a state prosecution was not precluded by the purported agreement, because Vinson failed to complete the required number of "buys." But even assuming there was an enforceable non-prosecution agreement between Vinson and the county sheriff, it does not bar the federal prosecution, because state and local officials have no power to bind the federal government. *United States v. Glauning,* 211 F.3d 1085, 1087 (8th Cir. 2000).

III.

Vinson next contends that the district court erred in failing to suppress the evidence obtained pursuant to the 1999 search warrant, because the warrant was based only "upon the bald allegations of an unidentified allegedly confidential reliable informant." (Appellant's Br. at 33). In evaluating a district court's denial of a motion to suppress, we review its factual determinations for clear error and its legal conclusions *de novo*. *United States v. Lynch*, 322 F.3d 1016, 1017 (8th Cir. 2003). Determinations of probable cause are "paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

Because the disputed evidence was seized pursuant to a warrant, it will not be excluded, even if a reviewing court determines that the supporting affidavit failed to establish probable cause, as long as the executing officers relied in objectively

reasonable good faith upon the warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984). As relevant here, the good faith exception to the exclusionary rule applies unless an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. at 923 (internal quotation omitted).

Vinson contends that the affidavit in support of the application for the 1999 search warrant was unsupported by probable cause because the informant was unreliable. We believe the affidavit provided the magistrate with "a substantial basis for determining the existence of probable cause," *Illinois v. Gates*, 462 U.S. at 239, and, in any event, we have no hesitation in concluding that an objectively reasonable officer could rely in good faith on the issuance of the warrant. Information from a confidential informant may be sufficient to establish probable cause if it "is corroborated by independent evidence" or if the informant "has a track record of supplying reliable information." *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (internal quotations omitted).

The affidavit in this case explained that the informant previously had provided information to law enforcement agencies that led to the arrest and conviction of numerous felony narcotics violators. The affiant stated that the informant had furnished information that was proven to be true and correct through independent corroboration. With respect to the information provided by the informant about Vinson, the deputy sheriff investigated post office and utility records to confirm that Vinson lived at the home identified by the informant, and confirmed that a car identified by the informant had been parked in front of the home on several occasions. The affiant also checked Vinson's criminal history, and discovered that he had sustained two prior convictions for drug offenses. This track record and corroboration is sufficient to establish the informant's reliability, and the facts contained in the warrant application – that the informant observed Vinson possessing and selling cocaine at his residence on "numerous occasions over the past 30 days" – were more than sufficient to establish probable cause. We conclude, therefore, that

the district court did not err in denying Vinson's motion to suppress the evidence seized pursuant to the warrant.

## IV.

Finally, with regard to his sentence, Vinson argues that his cooperation with law enforcement investigations justified a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b), rather than the two-level reduction that he received. Vinson advances this position even though his plea agreement called for only a two-level reduction, and stated that "[b]ecause the defendant entered his plea on the day of trial, the government will not agree to an additional point reduction for acceptance of responsibility." (App. at 8). We decline to consider this argument, because Vinson waived "his right to appeal . . . the sentence on any ground, unless the court should impose a sentence in violation of the law apart from the Sentencing Guidelines," as long as the court sentenced him "at or below offense level thirty two (32)." The district court imposed sentence based on a total offense level of 30, so the terms of the appeal waiver preclude Vinson's challenge to his sentence, and Vinson has presented no basis to conclude that his waiver was other than knowing and voluntary, or that enforcement of the agreement would be a miscarriage of justice. *See United States v. Andis*, 333 F.3d 886, 889-90 (8th Cir. 2003) (en banc).[2]

\* \* \*

The judgment of the district court is affirmed.

_____

[2]Vinson has raised no challenge to his sentence based on *United States v. Booker*, 125 S. Ct. 738 (2005).