# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2350

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Don Rodney Bledsoe, also known as | * | District of Missouri. |
| Terry L. Bledsoe, also known as Don | * | |
| R. Bledsoe, also known as Jermaine | * | |
| Walker, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 9, 2006
Filed: April 25, 2006

_____

Before WOLLMAN, JOHN R. GIBSON, and ARNOLD, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

A jury convicted Don Rodney Bledsoe of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced him to 96 months' imprisonment from which Bledsoe appeals. We affirm.

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

On June 13, 2003, officers with the St. Louis Metropolitan Police Department were on vehicle patrol in an area known for narcotics and weapons offenses. They observed a male, later determined to be Bledsoe, leaning in the driver's side window of a car that was facing east on a one-way street for westbound traffic. As the officers pulled up to the vehicle and began to get out of their squad car, Bledsoe started to run toward a nearby residence, clutching his right side as if he had a firearm. As he ran, he tripped and fell near the front steps to the house and dropped what appeared to be a firearm onto the sidewalk. After retrieving it, he continued into the residence and locked the front door. Giving chase, one of the officers kicked in the door and heard Bledsoe running up a flight of stairs. As the officer got to the top of the steps, he saw Bledsoe throw what the officer suspected to be a firearm toward an open window; it hit a wall and fell to the floor.

The officer apprehended Bledsoe, recovered a revolver, and placed him under arrest for unlawfully carrying a concealed weapon. While being booked, Bledsoe said that his name was Jermaine Anthony Walker and signed a booking sheet to that effect. He also gave a birth date, social security number, and phone number consistent with the name Jermaine Walker. The arresting officer testified at trial that, based on this information, police released Bledsoe from custody pending a warrant application. Several days after his release, law enforcement received the results of a fingerprint analysis revealing his true identity and an active warrant for an October 2002 parole violation.

Bledsoe was indicted for being a felon in possession of a firearm on April 1, 2004, but was not apprehended until September 23, 2004, and was not transferred into federal custody until October 7, 2004. In the wake of the United States Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004), the government filed a second superseding indictment on December 2, 2004, which added factual

allegations relevant to the sentencing enhancements.[2]  Following disposition of pretrial motions, the matter proceeded to trial, and the case was submitted to the jury.

If the jury returned a guilty verdict, the parties were prepared, in light of Blakely, to conduct a hearing for the government to present evidence of the facts supporting the sentencing factors alleged in the second superseding indictment. However, to obviate the need for such a hearing, the parties executed a "Waiver of Rights and Consent to Apply U.S. Sentencing Guidelines" during the jury's deliberations.  Under the terms of the agreement, Bledsoe waived his rights under Blakely, agreed to have his sentence determined according to the guidelines, and stipulated to enhancements for being previously convicted of a "violent felony" pursuant to Guidelines § 2K2.1(a)(6)(A) and (4)(A).  In exchange, the government agreed not to seek an enhancement for possession of a stolen firearm pursuant to Guideline § 2K2.1(b)(4).  The agreement, signed by Bledsoe, his counsel, and counsel for the government, was made a part of the record at trial.

The jury found Bledsoe guilty of the § 922(g)(1) charge.  Reflecting the parties' agreement, the presentence investigation report calculated a base offense level of 20 in light of Bledsoe's prior "violent felony" conviction and declined to recommend an enhancement for possession of a stolen firearm.  However, the report also recommended a two-level enhancement for obstruction of justice, an issue on which the parties' agreement was silent.  Based on an offense level of 22 and a criminal history category of V, the report recommended a sentencing range of 77 to 96 months' imprisonment.  Bledsoe filed objections to the presentence report, each of which the district court overruled.  Accepting the report's recommendations, the district court sentenced Bledsoe to 96 months' imprisonment to run consecutively to an

_____

[2]The second superseding indictment charged that: (1) Bledsoe was a previously convicted felon, see Guideline § 2K2.1(a)(6)(A) (2003); (2) he had previously been convicted of a "violent felony", see Guideline § 2K2.1(a)(4)(A) (2003); and (3) the firearm he possessed had been stolen, see Guideline § 2K2.1(b)(4) (2003).

undischarged state sentence, see Guideline § 5G1.3, followed by a two-year term of supervised release and a $100 special assessment. This appeal followed.

## I.

Initially, we must determine which of Bledsoe's claims are properly before us and which he waived under the agreement he entered into with the government at trial. The government claims that two of his points on appeal fall into the latter category. In the first, Bledsoe argues that the district court erred in applying an enhancement under Guideline § 2K2.1(a)(4)(A) based on the judge-found "fact" that his prior conviction for second degree burglary was a "violent felony" conviction within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e). In the second, Bledsoe contends that the district court's imposition of an obstruction of justice enhancement violated his Fifth and Sixth Amendment rights since it, too, was based on judicial factfinding and not charged in the indictment. We conclude that Bledsoe has waived both points on appeal.

"In determining the scope of an appeal waiver, we, of course, must look to the language of the waiver." United States v. Reeves, 410 F.3d 1031, 1034 (8th Cir.), cert. denied, 126 S. Ct. 469 (2005). Under the terms of his agreement with the government, Bledsoe "knowingly and voluntarily, and after consultation with counsel, waive[d] whatever rights exist under the Sixth Amendment and the principles announced by the Supreme Court in Blakely v. Washington." Although he specifically reserved the right to appeal "issues related to the jury's finding of guilt," he "explicitly waive[d] any right to appeal any issues relating to any right to indictment, jury trial, and burden of proof on sentencing facts." Thus, Bledsoe's challenges to judicial factfinding in arriving at his sentence are within the scope of his waiver.

We will generally enforce a waiver of appeal rights so long the defendant entered into it knowingly and voluntarily and enforcement does not result in a miscarriage of justice. See United States v. Reynolds, 432 F.3d 821, 823 (8th Cir. 2005) (citing United States v. Andis, 333 F.3d 886, 889 (8th Cir. 2003) (en banc)). Bledsoe makes no argument that his waiver is in any way invalid, nor does he point to any miscarriage of justice that will result from its enforcement. See United States v. Vinson, 414 F.3d 924, 930-31 (8th Cir. 2005). Bledsoe received the benefit promised in exchange for his waiver in that the government did not request, nor did the court impose, a sentencing enhancement for possession of a stolen firearm. Finding no reason to excuse Bledsoe from his bargain, we dismiss the appeal with respect to the waived claims.

## II.

Bledsoe also argues that there was insufficient evidence to support his enhancement for obstruction of justice. See U.S.S.G. § 3C1.1. Because Bledsoe's challenge to the evidentiary sufficiency of the district court's factual findings does not implicate "any right to indictment, jury trial, and burden of proof on sentencing facts," it is properly before us. See Reynolds, 432 F.3d at 824. Nonetheless, he can prevail on this claim only if the court's findings were clearly erroneous. United States v. Vinton, 429 F.3d 811, 818 (8th Cir. 2005).

It is the government's burden to prove the facts necessary to warrant a sentencing enhancement. United States v. Washington, 318 F.3d 845, 861 (8th Cir. 2003). Here, the government sought the obstruction of justice enhancement based on the false information Bledsoe provided to officers during the booking process. The commentary to Guideline § 3C1.1 specifically excepts "providing a false name or identification document at arrest" from application of the enhancement, unless providing it "actually resulted in a significant hindrance to the investigation or

-5-

prosecution of the instant offense." U.S.S.G. § 3C1.1, comment. (n.5(a)). Thus, the government was required to prove that the false information Bledsoe provided significantly hindered the investigation or prosecution of this case. United States v. Williams, 288 F.3d 1079, 1080-81 (8th Cir. 2002). In seeking to discharge this burden, the government relied primarily on the factual allegations in paragraph 8 of the presentence investigation report.[3] Based on these factual allegations, paragraphs 13 and 20 of the report recommended a two-level enhancement for obstruction of justice. Bledsoe argues that the district court could not rely on the factual allegations in paragraph 8 supporting the enhancement because he objected to the recommendation in paragraphs 13 and 20 that the enhancement be imposed.

Where a defendant makes a specific objection to a factual allegation in the presentence report, "the district court is obliged to resolve the factual dispute." United States v. May, 413 F.3d 841, 848 (8th Cir.), cert. denied, 126 S. Ct. 672 (2005); Fed. R. Crim. P. 32(c). However, if the defendant fails to make such an objection, the court may accept that fact as true for sentencing purposes. United States v. Tabor, 439 F.3d 826, 830 (8th Cir. 2006) (quoting United States v. Moser, 168 F.3d 1130, 1132 (8th

---

[3]Paragraph 8 of the report provided:

During the booking process, Bledsoe provided officers with the name Jermaine Walker and other false pedigree information, including the social security number of Walker [a felony offense pursuant to 42 U.S.C. 408(a)(7)(B)]. Based on the false information provided by the defendant, he was released from custody pending warrant application. Fingerprint analysis determined the defendant's correct identity to be Don Rodney Bledsoe. This analysis was not received until after the defendant had already been released. Had police known Bledsoe's true identity, he would not have been released; he would have been detained based on the parole violator warrant, which had been issued following the defendant absconding from parole supervision in October 2002. The warrant was active at the time of Bledsoe's arrest in the instant offense.

Cir. 1999)); Fed. R. Crim. P. 32(i)(3)(A).  Since Bledsoe "objected not to the facts themselves," but only to the report's "recommendation based on those facts," the latter principle is controlling.  Moser, 168 F.3d at 1132.  In such circumstances, the district court may rely on the unobjected-to factual allegation of the report in determining whether to impose an enhancement.  See id.  In doing so, the district court found by a preponderance of the evidence that the false information Bledsoe provided to law enforcement significantly hindered the investigation and prosecution of the instant offense.  This finding was not clearly erroneous.  See Williams, 288 F.3d at 1080.

However, even if we were to assume that Bledsoe's objection to the presentence report's enhancement recommendation was sufficient to call into question the factual allegations supporting it, the district court found that "the record when viewed in its entirety clearly refutes the objection and . . . it clearly supports the adjustment for obstruction of justice."  Specifically, the arresting officer testified at trial as to the false information Bledsoe provided during booking and how that led to his release from custody.  The officer also testified that it took law enforcement several days to learn of Bledsoe's true identity and that had they known of the active warrant for his arrest, he would not have been released.  The record at trial reflects that despite law enforcement's attempts to locate Bledsoe, he was apprehended more than a year after being mistakenly released.  Having presided over the trial, the district court was entitled to rely on this evidence at sentencing, see United States v. Bellrichard, 62 F.3d 1046, 1051 (8th Cir. 1995),  and from it, could find by a preponderance of the evidence that the false information Bledsoe provided significantly hindered the

investigation and prosecution of the instant offense.  See Williams, 288 F.3d at 1080.[4]

     Affirmed.

_____

---

[4]Bledsoe argues for the first time on appeal that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him because such application would exceed Congress's Commerce Clause power.  Several panels of this court have rejected this argument, United States v. Leathers, 354 F.3d 955, 959 (8th Cir.), cert. denied, 543 U.S. 844 (2004); United States v. Gary, 341 F.3d 829, 835 (8th Cir. 2003); United States v. Shepherd, 284 F.3d 965, 969 (8th Cir. 2002), and this panel "is not at liberty to revisit this issue."  Leathers, 354 F.3d at 959 (citing United States v. Wilson, 315 F.3d 972, 973-74 (8th Cir. 2003)).