# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2881

_____

United States of America,

Appellee,

v.

Reynoldo Razo-Guerra,

Appellant.

_____

No. 07-2978

_____

United States of America,

Appellee,

v.

Andres Rubio-Guerrero, also known as Manuel Rubio,

Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*   Appeals from the United States
\*   District Court for the
\*   Northern District of Iowa.
\*
\*
\*
\*
\*
\*
\*
\*
\*

_____

Submitted: May 15, 2008
Filed: July 25, 2008
_____

Before RILEY, HANSEN, and ARNOLD, Circuit Judges.
_____

HANSEN, Circuit Judge.

Andres Rubio-Guerrero (Rubio) and Reynoldo Razo-Guerra (Razo) each pleaded guilty to conspiring to distribute methamphetamine and marijuana, see 21 U.S.C. §§ 841(a), 846, and the district court[1] sentenced them to 240 months and 135 months of imprisonment, respectively. Each defendant appeals his sentence, and we affirm.

I.

The Tri-State Drug Task Force worked with a confidential source (CS) related to a suspected large-scale drug distribution scheme transporting methamphetamine and marijuana from Texas to the Midwest, particularly the Omaha, Nebraska, and Sioux City, Iowa, areas. Rubio contacted the CS in September 2006, asking him to transport 120 pounds of marijuana from Texas and offering to supply the CS with methamphetamine. The CS never transported the marijuana from Texas, but he was involved in numerous drug transactions with Rubio and Razo. The CS met Rubio on September 26, 2006, and they traveled together to meet Razo, who delivered a plastic bag to the CS containing 447.5 grams of 44% pure methamphetamine. On October 2, 2006, the CS made arrangements to receive 100 pounds of marijuana and one-half to one pound of crystal methamphetamine from Rubio. The CS met Rubio in Omaha,

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

and they drove together to Sioux City. The CS paid Rubio $4,000 for the prior delivery of methamphetamine. Meanwhile, at Rubio's request, Razo drove a car containing 100 pounds of marijuana in its trunk from Omaha to the residence of Marcela Gutierrez in Sioux City, where the marijuana was transferred to another vehicle. On October 3, the CS picked up Rubio, and they drove to a residence in South Sioux City, Nebraska, where Rubio fronted 75 pounds of marijuana to the CS out of the trunk of a car. The following day, October 4, Rubio offered the CS two more pounds of crystal methamphetamine, which the CS picked up from the back seat of the car that Razo had used to deliver the marijuana on October 3.

The defendants were arrested during a traffic stop on October 4, and the officers recovered identifiable cash from both defendants that the CS had used to pay Rubio. In a proffer interview, Razo informed officers that he had entered the United States illegally a few months prior to his arrest and that he mowed lawns for Rubio and took care of Rubio's houses. Razo informed the officers that he took two large garbage bags from Omaha to South Sioux City for Rubio, but claimed that he did not know what was in the bags and that he did not smell marijuana while he was transporting the bags. When asked when he last handled "ice," Razo responded one and one-half weeks prior. He also reported taking a bag from Rubio a week and a half prior and delivering it to Rubio's friend, though Razo claimed to not know the bag's contents. He guessed it may have contained cash. Razo denied helping Rubio sell or transport drugs and said he did not know Rubio sold drugs until the two were arrested. In a second proffer interview on June 29, Razo claimed that he did not know until he was arrested that he had been transporting drugs. The officers did not believe Razo's claim, and Razo provided no further information.

Rubio reported in a post-Miranda[2] interview that he had been living for three days in a hotel in Sioux City, that he had been in the United States for ten years, and

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

that he was unemployed. Rubio refused to answer any other questions about the instant offense. Drug Enforcement Agency officers from Oklahoma City, Oklahoma, and Dallas, Texas, informed the Tri-State Task Force officers a week later that they had been buying pound quantities of methamphetamine from Rubio.

Both defendants pleaded guilty without a plea agreement. At Razo's sentencing hearing, the district court denied Razo's motion for safety valve relief under the United States Sentencing Guidelines Manual (USSG) § 5C1.2(a)(5). Facing an advisory guidelines range of 108 to 135 months and a mandatory minimum sentence of 120 months, the district court sentenced Razo to 135 months of imprisonment. At Rubio's sentencing hearing, the district court determined that Rubio was a leader or organizer of a criminal activity involving at least five participants, and it increased his base offense level by four levels under USSG § 3B1.1(a). Rubio faced an advisory guidelines range of 210 to 262 months, and the district court sentenced him to 240 months of imprisonment.

Razo appeals his sentence, arguing that the district court erred in denying him safety valve relief. Rubio also appeals his sentence, arguing that the district court clearly erred in assessing a four-level enhancement under USSG § 3B1.1(a).

## II. Razo's Appeal

Razo faced a statutory minimum sentence of 120 months based on the quantity of drugs involved in his conviction. See 21 U.S.C. § 841(b)(1)(A). The safety valve exception authorized the district court to sentence Razo below the mandatory minimum sentence if Razo met the five criteria listed in § 3553(f), including "truthfully provid[ing] to the Government all information and evidence [he] ha[d] concerning the offense or offenses that were part of the same course of conduct." 18 U.S.C. § 3553(f)(5). We review for clear error the district court's finding that Razo was not truthful about his involvement in the drug trafficking conspiracy during his

two proffer interviews with the government. See United States v. Sanchez, 475 F.3d 978, 980 (8th Cir. 2007).

During the two proffer interviews, Razo told the agents that on one occasion he delivered a package wrapped in plastic to a friend of Rubio's at Rubio's request and that on another occasion he drove a car from Omaha to Sioux City for Rubio. Razo maintained throughout both proffer interviews that he did not know that the package wrapped in plastic contained crystal methamphetamine or that the car contained 100 pounds of marijuana in the trunk; he further asserted that he did not know Rubio was dealing drugs until he and Rubio were arrested. Razo argues that he nevertheless took responsibility for his involvement in the conspiracy by pleading guilty and that he told the officers the little that he knew, even implicating himself in additional drug activity.

The only evidence offered at the sentencing hearing was the testimony of Agent Dan Wagner, who testified that he did not believe that Razo did not know he was transporting marijuana based on the strong odor emitted by such a large quantity of marijuana in the trunk of a car. He testified that Ms. Gutierrez told him that Razo delivered the car containing the marijuana to her residence and that Razo was present when the drugs were transferred to a second car, from which the CS retrieved the marijuana. He also testified that he thought Razo was lying when he said he did not know that the package he handed to the CS contained crystal methamphetamine, based on its packaging in a clear Ziplock baggie. Razo's attorney cross-examined Agent Wagner but offered no additional evidence. The district court found Razo's claim that he did not know he was transporting drugs to be inconsistent with his guilty plea, which included knowledge of the drugs as an element of the conspiracy. The district court commented that Razo would have a more persuasive argument if he had entered an Alford[3] plea rather than a straight guilty plea. It specifically credited the testimony of Agent Wagner and adopted the findings from Razo's Presentence Investigation

---

[3]North Carolina v. Alford, 400 U.S. 25 (1970).

Report (PSR). The district court concluded that Razo did not provide all the information he knew about the offense and determined that Razo was ineligible for safety valve relief.

Razo bore the burden at the sentencing hearing of establishing each of the five requirements for safety valve relief by a preponderance of the evidence. Sanchez, 475 F.3d at 980. Razo's assertion that Agent Wagner's testimony did not conclusively establish Razo's knowledge of the drugs confuses the burden of proof; the Government had no burden to put on any evidence concerning Razo's eligibility for safety valve relief. See United States v. Alvarado-Rivera, 412 F.3d 942, 947-48 (8th Cir. 2005) (en banc) (rejecting a claim that the government has the burden to come forward with additional evidence in a safety valve challenge if the government finds a defendant's proffer inadequate), cert. denied, 546 U.S. 1121 (2006). Razo offered no evidence and argued only that his guilty plea and acceptance of responsibility for his part in the conspiracy entitled him to safety valve relief.

The record supports the district court's conclusion that Razo knew more than he was telling, particularly about his own knowledge of the drugs. Razo handed a package containing crystal methamphetamine wrapped in clear plastic to one individual and drove a car with 100 pounds of marijuana in the trunk from Omaha to Sioux City. He was present when the marijuana was transferred from the trunk of his car to another car. Officers who later confiscated the marijuana from the second car smelled the pungent aroma several feet away from the car. Although Razo denied knowing what "ice" or crystal methamphetamine was during his proffer interview, he told officers during his interview that he knew what cocaine and marijuana were. The record before the district court supported its finding that Razo was not being fully truthful during his proffer interviews. See United States v. Guerra-Cabrera, 477 F.3d 1021, 1025 (8th Cir. 2007) ("The district court was also entitled to infer untruthfulness from the implausibility of appellants' accounts."); Alvarado-Rivera, 412 F.3d at 947 ("Affirmance is required if the record supports the court's findings . . . .").

As noted by the district court and acknowledged by Razo's counsel during the sentencing hearing, Razo's guilty plea to a drug trafficking conspiracy is inconsistent with his claim that he did not know he was transporting or delivering drugs. Contrary to Razo's assertions, the district court did not require that he enter an Alford plea to be eligible for safety valve relief; it merely noted the inconsistency between a guilty plea and his assertion of innocence. Inconsistencies in the record support the district court's finding that Razo was not being fully truthful during his proffer interviews. See Sanchez, 475 F.3d at 981 (rejecting defendant's claim that he was only joking about negotiating a cocaine sale and that he lacked knowledge of a cocaine transaction as inconsistent with the facts before the court). The district court's finding was not clearly erroneous, and we affirm the denial of safety valve relief.[4]

## III. Rubio's Appeal

Rubio argues on appeal that the district court erred in assessing a four-level enhancement for being an organizer or leader of criminal activity involving five or more participants, see USSG § 3B1.1(a), and asserts in a related argument that the district court erred by treating factual statements in Rubio's PSR as admitted without requiring the Government to put on evidence of the facts supporting the role enhancement.

---

[4]Razo alternatively requests that we remand with instructions to allow him to withdraw his guilty plea and enter an Alford plea. Such action would not change the other facts in the record that support the district court's conclusion that Razo was not fully truthful. Further, Razo offers no authority that would allow us to order a remand for withdrawal of a guilty plea where the motion to withdraw was not first made to the district court. Cf. United States v. Washington, 515 F.3d 861, 864 (8th Cir.) (noting that a claim that a plea was involuntary is not cognizable on direct appeal where defendant had not first presented a motion to withdraw the plea to the district court), cert. denied, 128 S. Ct. 2493 (2008).

The district court considered certain facts from the PSR as admitted by Rubio because he failed to object to those specific facts as contained in the PSR. The district court relied on the factual allegations contained in paragraphs 27 through 29 and paragraph 31 of Rubio's PSR to establish the number of participants involved in the criminal activity. Paragraphs 27 through 29 described a proffer interview conducted with Ryan Kotalik, who reported his involvement as well as the involvement of Marcela Gutierrez, Mike Barnett, Alex Nieves, Maureen Rattray, Thiphaphone Phimmasane, and Edgar Gonzalez in transporting marijuana. Paragraph 31 described a proffer interview with Ms. Phimmasane, where she told officers that she allowed Rubio and Razo to store two bags of marijuana in the trunk of a car parked in her garage.

The Government must prove by a preponderance of the evidence each of the facts necessary to establish a sentencing enhancement. See United States v. Bledsoe, 445 F.3d 1069, 1073 (8th Cir. 2006). The Government relied on facts contained in the PSR as well as the testimony of Agent Wagner in urging the district court to assess a four-level enhancement for Rubio's role in the offense under USSG § 3B1.1(a). In determining whether the Government has met its burden, the district court "may accept any undisputed portion of the [PSR] as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). "[U]nless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes." United States v. Moser, 168 F.3d 1130, 1132 (8th Cir. 1999).

Rubio argues that he sufficiently challenged the factual allegations in the PSR related to the role in the offense enhancement by objecting to paragraphs 42 and 44. Paragraph 42 summarized the role in the offense enhancement and recommended a three-level enhancement, and paragraph 44 merely totaled the adjusted offense level. Rubio asserts that he impliedly objected to the underlying factual paragraphs by objecting to these summary paragraphs. Rubio's objection to the summary paragraphs stated only that "[t]he Defendant should not be assessed a two point [sic] enhancement

as a leader or organizer. The Defendant should have an adjusted offense level of 36 and not 40." (Dist. Ct. Docket Entry 67, Objections to Presentence Investigation Report at 2.) We have never recognized "implied objections" to factual statements contained in a PSR. Rather, we require that objections to the PSR be made "with 'specificity and clarity'" before a district court is precluded from relying on the factual statements contained in the PSR. See United States v. Wajda, 1 F.3d 731, 732 (8th Cir. 1993) (quoting United States v. Toirac, 917 F.2d 11, 13 (8th Cir. 1990)). The purpose of the objection is to put the Government on notice of the challenged facts, see United States v. Boyce, 507 F.3d 1101, 1102 (8th Cir. 2007), and Rubio's summary objection did not alert the Government as to which specific facts it needed to substantiate at the hearing. Because Rubio "'objected not to the facts themselves,' but only to the report's 'recommendation based on those facts,'" Bledsoe, 445 F.3d at 1073 (quoting Moser, 168 F.3d at 1132), the district court appropriately accepted the specific factual allegations contained in paragraphs 27 through 29 and 31 as true without further evidence by the Government.

Rubio also challenges as unsupported by the record the district court's findings that the criminal activity involved five or more participants as well as the finding that he was an organizer or leader as opposed to a manager or supervisor. We review these findings, which must be supported by a preponderance of the evidence, for clear error. See United States v. Garcia, 512 F.3d 1004, 1005 (8th Cir. 2008).

In addition to the factual allegations contained in the unobjected to paragraphs of the PSR, the Government also introduced the testimony of Agent Wagner, who conducted proffer interviews of Rubio and several other participants. Agent Wagner named Rubio, Razo, the CS, Marcela Gutierrez, Ryan Kotalik, Alex Nieves, and Janet Gonzales as involved in the criminal conduct for which Rubio was sentenced. Rubio, Razo, and the CS were each directly involved in the transactions leading to Rubio's arrest. Wagner testified that one of the drug transactions with the CS was conducted at Gutierrez's residence and that most of the other named individuals transported drugs

from the Texas/Mexico border to the Omaha, Nebraska, area. The unobjected to portions of Rubio's PSR substantiated this testimony. The district court did not clearly err in finding that the criminal conduct involved five or more participants.

Rubio claims that at most he was a supervisor or manager, but that he was not an organizer or leader, so that he should be subject to the three-level enhancement under USSG § 3B1.1(b) rather than the four-level enhancement under USSG § 3B1.1(a). "Factors the court should consider include the exercise of decision making authority, . . . the recruitment of accomplices, . . . the degree of participation in planning or organizing the offense, . . . and the degree of control and authority exercised over others." USSG § 3B1.1, comment. (n. 4). The unobjected to portions of the PSR and Agent Wagner's testimony provided evidence that Rubio recruited Razo and directed him to make drug deliveries; attempted to recruit the CS to transport drugs; made the decision to deliver drugs to the CS in Sioux City rather than in Omaha; supplied dealer-quantities of marijuana to Gutierrez; and recruited several other members of the conspiracy to transport drugs from Texas and Mexico to Omaha and to store the drugs. Faced with this evidence, the district court did not clearly err in finding Rubio to be an organizer or leader of the criminal activity. See Garcia, 512 F.3d at 1006 (affirming district court's finding of a leader or organizer from evidence that the defendant recruited others to join the conspiracy, received drug orders, and directed others to package and deliver drugs); United States v. Noe, 411 F.3d 878, 889-90 (8th Cir.) (affirming four-level enhancement for a defendant who controlled others in the conspiracy and supplied drugs to lower level dealers), cert. denied, 546 U.S. 892 (2005).

## IV.
Razo's and Rubio's sentences are each affirmed.

_____