# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2177
_____

United States of America

*Plaintiff - Appellee*

v.

Garland Joseph Nelson

*Defendant - Appellant*

_____

No. 23-2207
_____

United States of America

*Plaintiff - Appellee*

v.

Garland Joseph Nelson

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri
_____

Submitted: January 12, 2024
Filed: July 1, 2024
_____

Before LOKEN, KELLY, and STRAS, Circuit Judges.
_____

KELLY, Circuit Judge.

Garland Joseph Nelson pleaded guilty to one count of mail fraud and one count of felon in possession of a firearm. See 18 U.S.C. §§ 1341, 922(g)(1), 924(a)(2). The district court[1] sentenced him to 360 months of imprisonment and 36 months of supervised release, and ordered him to pay $260,925.07 in restitution. Nelson appeals the restitution order. We affirm.

I.

Between November 2018 and July 2019, Nelson operated a cattle fraud scheme in Missouri. Under the auspices of his mother's company, J4s Farm Enterprises, Inc., Nelson received cattle that belonged to Diemel's Livestock, LLC (Diemel's Livestock), a company that was owned and operated by brothers, Justin and Nicholas Diemel. Nelson agreed to feed and pasture the cattle in Missouri, and sell them after they had grown and become more valuable. But he failed to feed or care for the cattle properly, and many of the cattle died. Rather than disclose the loss to Diemel's Livestock, Nelson continued to accept more cattle—selling them as if they were the original cattle and continuing with the fraud. All told, of approximately 534 heads of cattle that Nelson received from Diemel's Livestock, 217—or 40%—died before they could be sold.

To lull Justin and Nicholas Diemel into believing that he would provide payment and to fend off their inquiries or complaints, on June 24, 2019, Nelson sent Diemel's Livestock a check for $215,936.50. However, the check came from an account that had a balance of only twenty-one cents, and Nelson damaged the check before sending, in an attempt to make it unusable. After receiving the check, the

_____

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

Diemel brothers traveled to Missouri on July 20, 2019. Nelson took them to several farms that day, and indicated that the cattle on those farms were theirs, but they could tell that was not true. The following morning, when Justin and Nicholas Diemel went to Nelson's mother's farm to receive the payment he still owed, Nelson killed them.

During the same time period as his fraud against the Diemel brothers, Nelson engaged in similar conduct involving farmer David Foster in Kansas, and farm owner John Gingerich in Missouri. Under that scheme, Nelson and Foster partnered in a joint venture to buy, raise, and sell newborn calves. While Foster provided Nelson with funding to buy the calves—including from Diemel's Livestock—Nelson was supposed to cover the costs of raising them, with the supposed aim of splitting the proceeds after the calves were sold. Gingerich, in turn, agreed to feed and doctor the calves with supplies provided by Nelson. Nelson, however, gave Foster inflated purchase prices and did not provide Gingerich with the necessary supplies to adequately feed or care for the calves. In an effort to save the calves, Foster and Gingerich used their own funds to care for them. But, in the end, as with the cattle from Diemel's Livestock, many died before they were sold. Of the 131 calves they purchased, only 35—or 27%—survived.

Nelson was subject to criminal and civil liability in Missouri for the killings of Justin and Nicholas Diemel. After pleading guilty to two counts of first-degree murder, he was sentenced to two consecutive terms of life without parole. In addition, Diemel's Livestock and members of the Diemel family brought a wrongful death action against Nelson, his mother, and J4s Farm Enterprises, Inc., which resulted in a two-million-dollar settlement agreement. That agreement provided surviving family members with "damages on account of personal injuries and sickness," and disposed of any other obligations or damages arising from the "personal injuries and/or death of Justin Diemel and Nicholas Diemel, deceased, and any other claims brought or that could have been brought . . . as a result of the incident on or about July 21, 2019." The agreement expressly allocated "Zero and 00/100 Dollars ($0) payable to Diemel's Livestock, LLC."

Nelson was also subject to federal criminal liability, and shortly after pleading guilty to state charges, he pleaded guilty to federal charges of mail fraud and felon in possession of a firearm.[2] At sentencing, the district court adopted the Presentence Investigation Report (PSR) "in its entirety," which included a determination as to restitution.

The PSR provided that "[p]ursuant to 18 U.S.C. § 3663A, restitution in the total amount of $260,925.07 shall be ordered in this case." In that same paragraph, the PSR indicated that "[r]estitution is due and owing" in the amounts of $215,936.50 to Diemel's Livestock; $32,625 to David Foster; and $12,363.57 to John Gingerich. Nelson submitted a written objection to that paragraph, stating:

> Mr. Nelson objects to any order as to restitution. Diemel Livestock had a civil suit against Mr. Nelson prior to this plea. Mr. Nelson believes that this money was collected through that suit. He denies owing money to David Foster, and Mr. Foster is not a victim in this case.

> Moreover, Mr. Nelson will be serving a life sentence, without the possibility of parole, in his state murder case. It would be impossible for more than a minor portion of this money to ever be collected.

The district court considered Nelson's two-part objection at sentencing.

With respect to Foster and Gingerich,[3] Nelson argued that any restitution would be "speculative," as the losses concern "a large cattle operation that involves

---

[2]Nelson was on supervised release for a prior conviction when these offenses occurred. That prior case was consolidated with the instant case before the district court. After Nelson admitted to violating conditions of his supervised release, the district court revoked his supervision and imposed a sentence of 24 months of imprisonment, to be served consecutively to the term of 360 months imposed in the instant case. On appeal, Nelson does not challenge the revocation or the sentence imposed in the prior case.

[3]At sentencing, the district court allowed Nelson to lodge the same objection and arguments that he raised against Foster to include Gingerich's losses as well.

a ton of people," and prices that change daily. But Nelson "did not object to the facts" that were the basis for calculating the restitution amounts, and agreed with the district court that he failed "to put the government on proper notice of that particular issue." Nelson also agreed with the district court that his objection "should have been more specific in talking about the speculative nature" of the loss. Nevertheless, he proposed having a separate restitution hearing if needed. The government argued that both Foster and Gingerich had provided documentation of their personal, out-of-pocket financial losses during the investigation, and took care to distinguish their losses from any expected profit. The district court overruled Nelson's objection after finding the paragraphs in the PSR that detailed the loss amounts to be "pretty straight forward and clearcut," such that no "complicated calculation" or additional information was required.

The district court next considered Nelson's argument that restitution to Diemel's Livestock constituted an impermissible double recovery. It overruled that objection because Diemel's Livestock had not received any funds under the settlement agreement, and furthermore the settlement concerned the Diemel brothers' wrongful death, whereas the criminal restitution order compensated losses from the fraud that is the basis of this case.

II.

On appeal, Nelson challenges the district court's restitution order. First, Nelson argues that the district court erred by not requiring the government to prove loss amounts by a preponderance of the evidence. Second, he argues the district court erred in concluding that a restitution award to Diemel's Livestock would not result in double recovery.

A.

We first address the issue of loss to Foster and Gingerich. "We review the district court's fraud loss calculation for clear error, and 'as long as the determination is plausible in light of the record as a whole, clear error does not exist.'" United

States v. Aden, 830 F.3d 812, 815–16 (8th Cir. 2016) (quoting United States v. Farrington, 499 F.3d 854, 859 (8th Cir. 2007)).

Pursuant to the Mandatory Victim Restitution Act (MVRA), a district court must order restitution when "an identifiable victim or victims has suffered a physical injury or pecuniary loss," and that loss actually resulted from "the commission of an offense." United States v. Hansmeier, 988 F.3d 428, 440 (8th Cir. 2021) (quoting 18 U.S.C. § 3663A(a), (c)). Generally, it is the government's burden to prove the restitution amount by a preponderance of the evidence. United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011). However, "[u]nless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes." United States v. Razo-Guerra, 534 F.3d 970, 975 (8th Cir. 2008) (quoting United States v. Moser, 168 F.3d 1130, 1132 (8th Cir. 1999)); United States v. Rodriguez, 711 F.3d 928, 940 (8th Cir. 2013) ("Vague and blanket objections lacking specific clarity are not sufficient." (citation omitted)). Cf. United States v. Searing, 250 F.3d 665, 667 (8th Cir. 2001) (concluding that because the defendant had objected to specific facts in the PSR, the district court erred by ordering restitution without first requiring supporting evidence).

Nelson argues the district court should have required the government to present evidence to prove Foster and Gingerich's losses, and asserts that by objecting to the paragraph in the PSR that recommended restitution, he put specific factual allegations in dispute. But as Nelson acknowledged at sentencing, he failed to object to the factual allegations regarding the loss amounts outlined in the PSR. Instead, he objected to "any order as to restitution," and asserted that Foster and Gingerich were not "victim[s] in this case." This "summary objection" lacked the "specificity and clarity" necessary to preclude the district court from relying on the factual allegations in the PSR. See Razo-Guerra, 534 F.3d at 976. The district court did not clearly err when it accepted the unobjected-to loss amounts alleged in the PSR. See id.; Moser, 168 F.3d at 1132.

B.

Next, we consider Nelson's argument that since the shareholders of Diemel's Livestock already recovered under the civil settlement agreement, the restitution would result in double recovery. "We review restitution awards for abuse of discretion and any factual findings about the amount to be paid for clear error." United States v. Kempter, 29 F.4th 960, 969 (8th Cir. 2022).

Under the MVRA, individuals who are convicted of mail fraud must pay restitution to identifiable victims. Hansmeier, 988 F.3d at 440; see United States v. Benedict, 855 F.3d 880, 886 (8th Cir. 2017) (recognizing that, in general, corporations may be victims under the MVRA). Although the MVRA aims "to make victims whole and compensate them for their losses, the MVRA does not allow victims to obtain double recovery or a windfall through restitution." United States v. Louper-Morris, 672 F.3d 539, 566 (8th Cir. 2012) (citations omitted). Consequently, the MVRA provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil proceeding." Id. (citing 18 U.S.C. § 3664(j)(2)(A)). To prevent double recovery, a district court may be required to offset the restitution amount after a defendant presents evidence that a victim has already received compensation. See United States v. Ruff, 420 F.3d 772, 776 (8th Cir. 2005) (remanding for the district court to consider whether a defendant's criminal restitution order to pay law enforcement must be offset by any amount law enforcement already received through forfeiture proceedings).

Nelson argues that because shareholders of Diemel's Livestock were already paid through the civil settlement agreement, the district court's restitution order of $215,936.50 amounted to an impermissible double recovery. But the settlement agreement expressly stated that Diemel's Livestock would *not* recover damages under the settlement, and Nelson did not present evidence that Diemel's Livestock received any other compensation in connection with the fraud alleged in this case. Thus, we find no clear error in the district court's finding that Diemel's Livestock

had received "no funds" under the settlement agreement.[4] See Louper-Morris, 672 F.3d at 566 (finding no double recovery and affirming criminal restitution order when defendant conceded that victim had not yet received any payments pursuant to a civil judgment). We also disagree with Nelson's contention that the district court relied too much on the fact that Diemel's Livestock did not recover damages from the settlement agreement, which the court described as "primarily" a wrongful death settlement. Given its factual findings, the district court did not abuse its discretion when it awarded restitution to Diemel's Livestock. See United States v. Chalupnik, 514 F.3d 748, 752 (8th Cir. 2008) (reviewing district court's decision to award restitution for abuse of discretion).

III.

We affirm the district court's restitution order.

_____

_____

[4]This decision does not preclude Nelson from seeking a future modification of the restitution order based on evidence of double recovery or—as raised for the first time on appeal—the dissolution of Diemel's Livestock. See United States v. Evans, 48 F.4th 888, 894 (8th Cir. 2022) ("[A]t the time of any enforcement of the restitution order, [the defendant] is free to present evidence to preclude recovery by way of restitution in the criminal case for the same conduct already compensated." (first alteration in original) (quoting United States v. Manzer, 69 F.3d 222, 230–31 (8th Cir. 1995))); United States v. Redlin, 983 F.2d 893, 896 (8th Cir. 1993) ("We will allow sentences to be attacked on grounds raised for the first time on appeal in only the most exceptional cases.").